OPINION
{¶ 1} RDH Enterprises, Inc. ("RDH") is appealing the decision of the Montgomery County Court of Common Pleas granting a motion for summary judgment in favor of Farmers Merchants Bank ("FM") and against RDH.
 {¶ 2} Randall and Sally Harmon own RDH, an excavation and demolition company. RDH opened a checking account at FM in November of 1999. The terms of the account stated that the Harmons were to review the bank statements and promptly report unauthorized signatures to FM. In the Spring of 2000, the Harmons hired Nancie Schaffer as a bookkeeper. Schaffer maintained control of the RDH checkbook, and received the mail. Schaffer also wrote checks on the RDH account and would present the checks to Randall Harmon to be signed, as Schaffer did not have authority to sign the checks. As a result, the Harmons would review with Schaffer the bills that needed to be paid, but would trust her to review the monthly bank statements and canceled checks.
 {¶ 3} Between June of 2000 and January of 2001, Schaffer forged Randall Harmon's signature on numerous checks totaling $46,000 made payable to Schaffer or her husband The check amounts ranged from $35 to $1,407.61. The Harmons alerted FM of the forgeries in January of 2001 after reviewing the December 2000 statement.
 {¶ 4} On June 19, 2001, RDH filed a complaint against FM, asserting that the bank was negligent in paying out the monies bearing the forged signatures. Schaffer was added as a defendant in February of 2002, and a default judgment was eventually granted against her.
 {¶ 5} FM filed a motion for summary judgment in February of 2003, asserting that (1) RDH was negligent in failing to properly supervise and oversee its employee, resulting in the loss; (2) RDH was negligent in failing to timely review the monthly statements; and (3) RDH's failure to timely review the statements limited RDH from claiming that FM was liable for the amounts paid out on the forged checks. The trial court granted FM's motion for summary judgment, finding that RDH had failed to demonstrate that a genuine issue of fact existed regarding the level of care exercised by FM. RDH now appeals, asserting one assignment of error:
 {¶ 6} "The trial court erred to the prejudice of Appellant in granting summary judgment in favor of Appellee."
 {¶ 7} RDH asserts that it did produce specific facts that FM did not exercise the appropriate level of care, specifically that FM did not implement Federal Reserve regulations and clearinghouse rules and regulations.
 {¶ 8} "[T]he Uniform Commercial Code is a delicately balanced statutory scheme designed, in principle, to ultimately shift the loss occasioned by negotiation of a forged instrument to the party bearing the responsibility for the loss." Ed Stinn Chevrolet, Inc. v. Natl. CityBank (1986), 28 Ohio St.3d 221, 226, 503 N.E.2d 524, 530, modified on rehearing (1987), 31 Ohio St.3d 150, 509 N.E.2d 945. Generally, a check bearing a forged drawer's signature is not "properly payable," pursuant to R.C. 1304.24, and if the bank pays the check, the bank is generally liable to its customer. Id. at 227.
 {¶ 9} However, there are exceptions to this liability. One such exception can be found under R.C. 1303.49, which states, in pertinent part:
 {¶ 10} "(A) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.
 {¶ 11} "(B) Under division (A) of this section, if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded under division (A) of this section from asserting an alteration or forgery and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss."
 {¶ 12} The agreement with FM, signed by RDH on November 24, 1999, states the following:
 {¶ 13} "STATEMENTS — You must examine your statement of account with `reasonable promptness.' If you discover (or reasonably should have discovered) any unauthorized payments or alterations, you must promptly notify us of the relevant facts. If you fail to do either of these duties, you will either have to share the loss with us, or bear the loss entirely yourself (depending on whether we exercised ordinary care and, if not, whether we substantially contributed to the loss). The loss could be not only with respect to items on the statement but other items forged or altered by the same wrongdoer. You agree that the time you have to examine your statement and report to us will depend on the circumstances, but that such time will not, in any circumstance, exceed a total of 30 days from when the statement is first made available to you.
 {¶ 14} "You further agree that if you fail to report any unauthorized signatures, alterations, forgeries or any other errors in your account within 60 days of when we make the statement available, you cannot assert a claim against us on any items in that statement, and the loss will be entirely yours. This 60 day limitation is without regard to whether we exercised ordinary care."
 {¶ 15} It is undisputed that RDH failed to exercise reasonable promptness in examining its monthly bank account statements under R.C.1304.35. However, under R.C. 1303.49, if FM did not exercise ordinary care and substantially contributed to the loss, RDH will not be solely liable for the negligence. It was RDH's burden to demonstrate that FM failed to exercise ordinary care and that this failure substantially contributed to RDH's loss.
 {¶ 16} Contrary to RDH's contention that ordinary care is not defined in the code, the definition of "ordinary care" can be found in R.C. 1303.01(9):
 {¶ 17} "`Ordinary care' in the case of a person engaged in business means observance of the reasonable commercial standards that are prevailing in the area in which the person is located with respect to the business in which the person is engaged. In the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures, and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this chapter or Chapter 1304. of the Revised Code."
 {¶ 18} The trial court found that RDH failed to produce any evidence that FM had violated its level of ordinary care. On appeal, RDH asserts that the trial court erred in its conclusion, and that a question of fact remains on such. Specifically, RDH contends that the deposition of FM's Chief Executive Officer, Ray Shambrock, is evidence that the Federal Reserve regulations and clearinghouse rules and regulations are not in place at FM. According to RDH, Shambrock's deposition demonstrates that FM had no procedure to verify signatures that coordinated with general banking usage. Additionally, RDH relies upon several cases from outside Ohio that state that the issue of ordinary care is a question for the jury.
 {¶ 19} We disagree with RDH. To the contrary, we find that Shambrock's deposition produced evidence that FM did exercise ordinary care. The following exchange is evidence that FM followed its own prescribed procedures and general banking practices:
 {¶ 20} "Q. How about checks that come in, end up here at the bank as a drawee bank and end up in your proof and transit department?
 {¶ 21} "A. That's $10,000.
 {¶ 22} "Q. 10,000. So any check under $10,000, there is no comparison of signature?
 {¶ 23} "A. No.
 {¶ 24} "Q. Could you tell me why the amount of $10,000 is chosen?
 {¶ 25} "A. Just a standard used in the industry." (Shambrock Deposition, p. 25.)
 {¶ 26} Shambrock testified that it was FM's procedure to manually verify signatures only on checks greater than $10,000. None of the checks in this instance amounted to more than $1500, so this is evidence that it did not violate its own procedures. Additionally, Shambrock explained that this threshold of $10,000 was an industry standard, thus supporting FM's position that it did not violate general banking practices.
 {¶ 27} RDH offered no specific evidence that these standards were not in conformity with the Federal Regulations, clearinghouse rules and regulations, or general banking usage. Accordingly, we find that RDH did not produce evidence that FM violated its duty of ordinary care, and thus no material questions of fact remain on this issue.
 {¶ 28} For these reasons, we find RDH's assignment of error to be meritless.
 {¶ 29} The judgment of the trial court is affirmed.
FAIN, P.J. and GRADY, J., concur.