MUELLER et al., Appellants,

v.

MILLER et al.; FIFTH THIRD BANK, Appellee.

[Cite as *Mueller v. Miller*, 162 Ohio App.3d 698, 2005-Ohio-4213.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2004–P–0082.

Decided Aug. 12, 2005.

Caroline Mueller, for appellants.

Jeffrey P. Hinebaugh and Sarah V. Lewis, for appellee.

WILLIAM M. O'NEILL, Judge.

{¶ 1} This accelerated-calendar appeal, submitted on the record and briefs of the parties, arises from the Portage County Court of Common Pleas. Appellants Matt Mueller and Mueller Tree Inc., d.b.a. Mueller Tree Service, appeal the trial court's entry of summary judgment in favor of appellee, Fifth Third Bank ("Fifth Third").

{¶ 2} Mueller opened a business account at Fifth Third in the name of Mueller Tree Service. Mueller was the sole signatory on the account, and as a regular practice, Fifth Third mailed monthly statements to Mueller that included the return of all canceled checks on the account.

{¶ 3} In the fall of 1999, Mueller Tree Service employed Mark Miller, first as a laborer and then as a foreman. Miller was paid a weekly salary of $650 in cash. At no time was Miller given official access to the business bank account, and he

was never a signatory on the account. On October 8, 2003, Mueller discovered that Miller had been misappropriating funds belonging to the business by forging Mueller's name on company checks to which he had gained access. On that same date, Mueller went to a Fifth Third branch office to report the forged checks and to request that a hold be placed on the account to prevent the processing of any other forged checks when presented for payment. A hold was placed on the account at that time.

{¶ 4} On December 2, 2003, appellants filed a complaint in the Portage County Court of Common Pleas against defendants, Mark Miller, Stephanie Miller (Miller's wife), and Fifth Third, seeking money damages, a temporary restraining order, and injunctive relief. The complaint alleged that over $100,000 had been embezzled via forged checks over a three-year period.

{¶ 5} On May 24, 2004, Fifth Third filed a motion for summary judgment, contending that the bank was not liable for the loss of funds on the grounds that (1) appellants had not complied with the statutory duties to exercise reasonable promptness to examine the bank statements and promptly notify the bank of any unauthorized payments, (2) appellants had not exercised ordinary care to prevent the forgeries, and (3) appellants had not complied with the contractual provisions of the deposit agreement with the bank, together with the rules and regulations incorporated therein. Appellants filed a brief in opposition, followed by a reply brief by Fifth Third. On August 18, 2004, the trial court granted Fifth Third's motion for summary judgment. Appellants voluntarily dismissed the remainder of their pending claims against the Millers on September 8, 2004, and subsequently filed a notice of appeal with this court.

{¶ 6} Appellants present a single assignment of error on appeal:

{¶ 7} "The trial court erred to the prejudice of the plaintiffs when on defendant FTB's motion for summary judgment, it dismissed the plaintiffs [sic] claims against FTB."

{¶ 8} The thrust of appellants' contention on appeal is that the trial court erred in granting summary judgment in favor of Fifth Third. Appellants further contend that Fifth Third remains statutorily liable for a portion of the embezzled funds.

{¶ 9} We begin by noting that the standard for addressing a motion for summary judgment is set forth in Civ.R. 56(C). In order to prevail, the moving party must establish that (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving

party, that conclusion is adverse to the nonmovant.[1] Further, a party seeking summary judgment must point specifically to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims.[2] In response, the nonmoving party must set forth specific facts that demonstrate that there is a genuine factual issue to be tried.[3] "An appellate court applies a de novo standard of review when determining whether a trial court properly granted summary judgment."[4]

{¶ 10} In their complaint, appellants alleged that Miller had forged a number of checks over approximately three years in an amount totalling over $100,000. In its motion for summary judgment, Fifth Third cited relevant portions of the Uniform Commercial Code, Sections 3–406 and 4–406, codified as R.C. 1303.49 and R.C. 1304.35, respectively, in support of its contention that it was entitled to judgment as a matter of law.

{¶ 11} R.C. 1303.49 prescribes a duty of ordinary care on both the customer and the bank. A customer whose failure to exercise ordinary care contributes to the forged instrument is precluded from asserting the forgery against the bank; likewise, the bank that fails to exercise ordinary care in paying or taking the forged instrument must bear the loss to the extent that its failure to exercise ordinary care contributed to the loss. The relevant portions of the statute read as follows:

{¶ 12} "(A) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

{¶ 13} "(B) Under division (A) of this section, if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to the loss, the loss is allocated between the person precluded under division (A) of this section from asserting an alteration or forgery and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss."

---

1. Civ.R. 56(C); *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 268, 617 N.E.2d 1068.

2. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

3. *Smith v. L.J. Lewis Ent., Inc., d.b.a. Action Emergency Ambulance* (Sept. 28, 2001), 11th Dist. No. 2000–T–0052, 2001 WL 1149865 at *5.

4. (Citations omitted.) *Burkholder v. Straughn* (June 26, 1998), 11th Dist. No. 97–T–0146, 1998 WL 553623 at *2.

{¶ 14} Division (C) of the statute sets forth the burden to prove a failure to exercise ordinary care, depending on which party—the customer or the bank—is asserting a preclusion.

{¶ 15} R.C. 1304.35 governs a bank customer's duty to discover and report an unauthorized payment and reads:

{¶ 16} "(A) A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid.

{¶ 17} "* * *

{¶ 18} "(C) If a bank sends or makes available a statement of account or items pursuant to division (A) of this section, the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized.  If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

{¶ 19} "(D) If the bank proves that the customer failed with respect to an item to comply with the duties imposed on the customer by division (C) of this section, the customer is precluded from asserting either of the following against the bank:

{¶ 20} "* * *

{¶ 21} "(2) The customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding thirty days, in which to examine the item or statement of account and notify the bank.

{¶ 22} "* * *

{¶ 23} "(F) Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer discover and report his unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration * * *."

{¶ 24} In the instant matter, dates on the forged checks range from January 2001 through October 2003.  Mueller reported the forgeries to Fifth Third on October 8, 2003.  Appellants contend that a genuine issue of material fact exists as to whether they timely notified Fifth Third of the forged checks.

However, appellants concede that they got all their statements on a timely basis. They further concede that pursuant to the one-year limitation period of R.C. 1304.35(F), Fifth Third is entitled to judgment as a matter of law on all instruments that were paid on or before October 8, 2002. Thus, appellants seek recovery for the checks paid by Fifth Third between October 8, 2002, and October 8, 2003. Therefore, we will address appellants' claim only as it relates to instruments paid by Fifth Third within that period.

{¶ 25} In determining whether Fifth Third can be held liable for paying the forged checks within the relevant period, we must consider the applicable statutory provisions. R.C.1304.35(C) imposes two duties upon the bank customer: (1) the duty to "exercise reasonable promptness" in examining bank statements and canceled checks to determine whether there have been any unauthorized payments and (2) the duty to promptly notify the bank of unauthorized payments that should have come to the customer's attention.

{¶ 26} R.C. 1304.35(D)(2) provides that a customer who has failed to comply with the duties imposed in subsection (C) is precluded from asserting against the bank the fact that the "same wrongdoer" was not authorized to sign any other check that the bank paid, provided that the payment was made in good faith, was made before the bank received notice of the unauthorized payment, and was made within 30 days of receipt of the customer's bank statement.

{¶ 27} In its motion for summary judgment, Fifth Third offered evidence that it had continued to provide appellants with monthly statements as well as canceled checks on the account. The first allegedly fraudulent check was drafted on January 4, 2001. However, Mueller did not notify Fifth Third of any wrongdoing until October 8, 2003. Therefore, a period of nearly three years elapsed before Mueller notified the bank of any unauthorized payments. Miller signed each of the fraudulent checks, thus becoming the "same wrongdoer" referred to in the statute.

{¶ 28} Upon Fifth Third's demonstration that it adhered to statutory banking procedure with regard to appellants' account, the burden shifts to appellants to demonstrate that a genuine issue of material fact exists to warrant trial.[5] Appellants contend they were unable to notify the bank sooner, as Miller possessed the statements and canceled checks and failed to return them to appellants in a timely manner. We do not find this argument persuasive. Miller was never a signatory on the account. Appellants always paid Miller the same weekly salary in cash. Thus, the multiple checks made out to Mark Miller as early as January 2001 should have been discovered by appellants upon a reasonable inspection of the account. Miller's physical possession of the bank

---

5. *Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264.

statements and canceled checks weighs heavily against appellants' position, as it denotes a failure to maintain and review the bank account by the sole signatory.

{¶ 29} In his affidavit attached to his brief in opposition to the bank's motion for summary judgment, Mueller asserts "that for the past several years he traveled out of state to pursue other business opportunities."

{¶ 30} We have no way of knowing just how long Mueller was out of state, and there is nothing else in the record to so indicate. Appellants argue that the statutory phrase "reasonable promptness" can mean that a customer might need a period of some years before he would be able to examine his statements. However, the argument stretches our imagination, and without more support in the record, we cannot accept the bare allegation that Mueller was out of state for some period to demonstrate the reasonableness of his omission to examine his monthly statements. We further note that, having stated that he was out of state pursuing other business interests, there is no statement whatsoever to the effect that while out of state, he took reasonable measures to ensure that the statements were opened and examined during the periods of time he was out of state. Mueller gives us no proof in his affidavit that would lead us to believe that he did anything to effect such measures. Finally, division (F) of the statute would preclude a claim going back more than one year, even if Mueller were out of state for the entire 33 months and eight days. Under both this statute and a former analogous section, Ohio courts have consistently held that failure to examine records in a far shorter period than the one alleged in the instant case is considered a failure to timely review banking statements.[6]

{¶ 31} Having failed, as a matter of law, to exercise "reasonable promptness" to examine the monthly statements, the statute then abridges appellants' ability to challenge other forged checks signed by the "same wrongdoer." Even if the relevant period were considered to be October 8, 2002, up to and including October 8, 2003, when the forgeries were discovered and reported, still the statute would abridge the period within which forgeries could be pursued to December 2002, or ten months before they were actually reported. That is because if the forgeries were all committed by the same wrongdoer, but the customer has not fulfilled his duties to reasonably promptly examine his statements and notify the bank of any forgeries, which appellants did not do in this case, then they have only 30 days from the receipt of the statement, not the discovery of the forgery, to report such forgeries. Thus, if checks had been forged in October 2002, they would have been mailed to appellants with the

---

6. *RDH Ents., Inc. v. Farmers & Merchants Bank,* 2d Dist. No. 19934, 2003-Ohio-6247, 2003 WL 22764429 (six months); *Village Leasing, Inc. v. Society Natl. Bank* (1984), 15 Ohio App.3d 126, 15 OBR 217, 473 N.E.2d 830 (13 months).

November 2002 bank statement. This would give appellants until December 2002 to report the forgeries. By October 8, 2003, it was too late.

{¶ 32} Appellants are also precluded from prevailing under the statute prescribing a duty of ordinary care with respect to forged instruments. Under R.C. 1303.49, if the customer's failure to exercise ordinary care substantially contributed to the forged signature, then he is precluded from asserting the forgery against the bank that pays it in good faith.

{¶ 33} The Uniform Commercial Code defines "ordinary care" as follows:

{¶ 34} "(9) 'Ordinary care' in the case of a person engaged in business means observance of the reasonable commercial standards that are prevailing in the area in which the person is located with respect to the business in which the person is engaged." [7]

{¶ 35} As we have already made clear, there is nothing in the record to support the proposition that appellants used "ordinary care" to employ any measures to ensure that the bank statements were managed properly in Mueller's absence. There is merely the bare allegation that he was out of state pursuing other business opportunities. As we stated above, the fact that Mueller was out of state does not vitiate appellants' responsibility to ensure that the business was being managed properly. Thus, as a matter of law, appellants did not exercise ordinary care with respect to examining the bank statements, and they are precluded from asserting forgeries against the bank for this additional reason.

{¶ 36} Fifth Third Bank made the final argument in its motion for summary judgment that appellants were in violation of their deposit agreement, including the rules and regulations incorporated by reference therein. We are not persuaded by this argument, however, for two reasons.

{¶ 37} First of all, Fifth Third attached a copy of the original deposit agreement dated January 21, 1997, to its motion for summary judgment, but the rules and regulations, also attached to its motion, are dated "October 2003." From this part of the record, therefore, we are unable to discern whether appellants violated the bank's rules and regulations that were promulgated prior to October 2003. We also note that the paragraph of the rules and regulations, specifically paragraph 28, which the bank seeks to enforce against appellants, is contrary to Ohio law in that it rewrites R.C. 1304.35(C) to require the bank customer to notify the bank of any forged signatures within 30 days of the statement mailing date. This is a departure from the statute, which requires "reasonable promptness" to examine the monthly statements and, then, notification of any forged signatures. Thereafter, if the customer has not complied with

---

7. R.C. 1303.01(A)(9).

these two duties, the customer has only 30 days from the receipt of the bank statement to notify the bank of any forgeries. Due to this inconsistency between the statute and the rules and regulations, we do not adopt this ground as a basis for affirming the decision below, and, in fact, this clause, being contrary to Ohio law, is unenforceable.

{¶ 38} Appellants have failed to demonstrate that a genuine issue of fact exists regarding their duty to inspect the banking statements with reasonable promptness and then to notify the bank of any forgeries. Nor does there exist a genuine issue of material fact with respect to appellants' duty to exercise ordinary care to guard against the possibility of forged signatures. Two years and ten months, without a satisfactory explanation for such an unusually long delay, denigrates that duty, and, thus, the trial court did not err in entering summary judgment in favor of Fifth Third.

{¶ 39} Appellants' assignment of error is without merit.

{¶ 40} Thus, based on the foregoing, the judgment of the Portage County Court of Common Pleas is affirmed.

Judgment affirmed.

FORD, P.J., and O'TOOLE, J., concur.