DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal of the judgment of the Lucas County Court of Common Pleas which granted appellee, Sky Bank Mid Am Region ("Sky"), summary judgment and denied summary judgment to appellant, Elliott H. Saferin M.D. ("Saferin"). The trial court awarded approximately $23,000 in attorney fees to appellee for the credit card fraud portion of the litigation. For the reasons set forth below, the judgment of the trial court is affirmed.
 {¶ 2} On appeal, appellant sets forth the following four assignments of error:
 {¶ 3} "1. The trial court committed reversible error and denied Dr. Saferin his constitutional rights to due process and a jury trial when it denied him a right to challenge the Bank's evidence regarding the amount of attorneys fees owed and instead entered judgment after an ex parte review.
 {¶ 4} "2. The trial court committed reversible error in granting the Bank summary judgment on its counterclaim for attorney fees and in denying Dr. Saferin's motion for summary judgment.
 {¶ 5} "3. The trial court committed reversible error in granting the Bank's summary judgment on Dr. Saferin's claims for losses due to the Bank's negligence in processing the credit card fraud and in denying Dr. Saferin's motion for summary judgment on this claim.
 {¶ 6} "4. The trial court committed reversible error in granting the Bank's summary judgment on Dr. Saferin's claims for losses due to the Bank's negligence in processing the forged checks."
 {¶ 7} The following undisputed facts are relevant to the issues raised on appeal. Saferin owns and operates a successful plastic surgery practice located in Northwest Ohio. Saferin's business operates under the corporate name of "Plastic Laser 
Hand Surgeons of Toledo, Inc." In connection with his plastic surgery business, Saferin opened a business checking account with Sky on March 4, 1997. Sky issued monthly checking account statements to Saferin, enclosing photocopies of all checks paid out of the business account for the preceding month. Saferin did not personally review or assign to one of his employees the duty to review his monthly business checking account statements to detect unauthorized transactions or fraudulent account activity. Saferin did not retain or utilize an outside accounting or business management professional to review the monthly statements to ensure their accuracy and legitimacy.
 {¶ 8} On May 21, 1997, Saferin expanded his business relationship with Sky. Saferin and Sky executed a merchant credit card agreement to enable Saferin to accept credit card payments from his plastic surgery clients. Sky delivered a credit card machine to Saferin for processing credit card transactions. The terms of this credit card agreement were set forth in a written contract presented to Saferin at the time of machine delivery. Saferin executed the agreement at the time of delivery. Saferin did not review or analyze the terms of the credit card agreement. Saferin did not request an opportunity to discuss, verify, or negotiate the terms of Sky's standardized business credit card agreement.
 {¶ 9} In April 1998, Saferin hired Judy Styer to join his office staff. Styer was assigned a wide array of job duties and responsibilities. Styer's responsibilities included receptionist duties, assisting with patients, and various financial and accounting duties. Styer was solely responsible for maintaining and monitoring the corporate checking account. Styer was solely responsible for preparing business checks for accounts payable. Styer was solely responsible for obtaining Saferin's signature on the business checks. Styer was solely responsible for entering payments in the account ledger. Styer was solely responsible for mailing out corporate checks. Saferin assigned these all encompassing accounting duties to a single employee, Styer, despite having been advised by his outside business accountant of the inherent risks and hazards of not separating these financial functions amongst multiple employees to minimize risk of internal loss. Saferin was responsible for supervising Styer. Saferin elected not to supervise Styer or monitor the integrity and legitimacy of her accounting activities.
 {¶ 10} Approximately one year after Styer began employment, Saferin's wife was processing and reviewing the office mail while Styer was on vacation. Saferin's wife opened the monthly credit card statement normally processed by Styer, noticed unusual entries, and investigated the statement. She ultimately discovered that Styer had engaged in a fraudulent credit card scam in which Styer secured phony credit card "refunds" from her employer in the amount of $32,833. This discovery prompted a full review of Saferin's business records.
 {¶ 11} This review uncovered a second tier of internal theft by Styer. Saferin's past monthly business checking account statements revealed that Styer forged Saferin's signature on 20 checks made payable to herself from July 28, 1998 until June 14, 1999. Styer embezzled an additional $20,388 from Saferin through her check forgery scheme.
 {¶ 12} Once the criminal acts by Styer were uncovered by Saferin's wife, Styer was criminally prosecuted. Saferin did not recover the funds taken by Styer through the criminal prosecution. Having failed to recoup his loss via the criminal cases, Saferin filed a civil action against Sky.
 {¶ 13} On August 27, 2001, Saferin filed suit against Sky, alleging negligence by Sky connected to Styer's credit card and checking account schemes. Saferin and Sky filed cross-motions for summary judgment on September 30, 2002. On November 26, 2002, the trial court granted summary judgment to Sky and denied Saferin's motion for summary judgment.
 {¶ 14} The trial court awarded Sky attorney fees for its defense of the credit card portion of the litigation based on an indemnification provision in the credit card contract. Saferin filed a motion for reconsideration and a brief in opposition to the award of attorney fees. Sky filed a memorandum in support of the award of attorney fees, including affidavits in support of the reasonableness of the fees. The trial court conducted an in-camera inspection of all documentation submitted by Sky in support of its attorney fees claim. On March 2, 2005, the trial court granted Sky attorney fees in the amount of $22,762. Saferin filed a timely notice of appeal. Saferin is appealing the award of attorney fees and the summary judgment rulings.
 {¶ 15} We note at the outset that we must employ a de novo standard of review of the trial court's summary judgment decisions, applying the same standard used at the trial court.Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129; Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 16} We have thoroughly reviewed the briefs and the record in this matter. The reverse chronological order in which the assignments are presented by appellant is counterintuitive and does not promote our substantive analysis. Saferin concedes the order in which we prefer to address the assignments "might flow better." We will review the assignments from last to first.
 {¶ 17} In his fourth assignment of error, appellant asserts the trial court erred in granting summary judgment to Sky on Saferin's negligence claim against Sky regarding the check forgery. In support of this assignment, appellant asserts the trial court erroneously concluded his negligence "substantially contributed" to the forgery. One whose own negligence "substantially contributed" to forgery is statutorily precluded from recovering for their loss. R.C. 1303.49 states in relevant part:
 {¶ 18} "A person who's failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection."
 {¶ 19} We must examine the actions of Saferin and Sky, as shown by the evidence contained in the record, and ascertain if either party negligently contributed to the forgery. If both were negligent, the statute requires the loss from the forgery be allocated between the parties. By contrast, if Saferin was negligent, Sky was not negligent, and Saferin's negligence "substantially contributed" to the forgery, then Saferin is precluded from recovering against Sky for Styer's forgery as a matter of law.
 {¶ 20} Undisputed testimonial evidence of the surrounding circumstances which gave rise to the forgery is illuminating to our comparative negligence analysis. Saferin concedes he did not personally monitor his monthly business checking account statements. He also concedes he did not assign or direct anyone to monitor the statements. Saferin designed Styer's job duties and responsibilities in a way that included no mechanism to act as a check and balance of the authenticity of her accounting work.
 {¶ 21} Saferin's outside accountant had previously counseled Saferin against entrusting an aggregation of financial and accounting responsibilities to a single individual due to the inherent risk of abuse in such an unchecked, unilateral arrangement. Saferin did not heed his accountant's advice. Saferin failed to implement or utilize any accounting mechanisms to independently monitor the integrity and accurateness of his business's checking account transactions. Styer enjoyed exclusive and unsupervised responsibility for the business checking account.
 {¶ 22} Between July 28, 1998 and June 14, 1999, Styer forged Saferin's signature on checks and named herself as payee. She embezzled $20,388 from the business by this forgery scheme. This went undetected for a one year period. This occurred because of a business structure lacking basic internal accountability. No one was assigned the responsibility to independently monitor the monthly corporate checking account statements. The lack of accounting oversight enabled Styer's forgeries to go undetected for nearly a year.
 {¶ 23} Controlling Supreme Court of Ohio case law establishes that business practices which include the combination of all accounting and financial functions to a single employee can properly be found to be negligent by the employer. Such a system provides no check against employee theft or fraud. In G.F.DEnterprises, Inc. v. Nye, 37 Ohio St.3d 205, the Supreme Court of Ohio found utilizing the same employee to prepare checks, post the amounts in the account ledger, and reconcile the account is negligent and incompatible with proper accounting standards.
 {¶ 24} The wholly unchecked system found negligent inG.F.D. is analogous to the system utilized by Saferin. Saferin's negligence substantially contributed to his loss. There is no evidence of bad faith against Sky for its acts in connection with Saferin's checking account. Saferin is statutorily precluded from recovery against Sky for losses attributable to the forgery. Mueller v. Fifth Third Bank,162 Ohio App.3d 698, at ¶ 32. Appellant's fourth assignment of error is found not well taken.
 {¶ 25} In his third assignment of error, Saferin asserts the trial court erred in granting summary judgment to Sky for his losses caused by Styer's fraudulent use of Saferin's business credit card account. In support, Saferin asserts Sky's credit card agreement with Saferin was "unconscionable" and reflective of "unequal bargaining power" in the transaction.
 {¶ 26} The record shows that Saferin voluntarily executed Sky's credit card contract upon delivery of the credit card machine to Safferin's office. Saferin requested credit card service from Sky in order to accept credit card payments from his plastic surgery clients. This agreement contained an indemnification provision controlling and determinative to our analysis. The credit card merchant warranty provision allocated risk of loss attributable to actions of the merchant's employees to the merchant.
 {¶ 27} Saferin attempts to negate the ramifications of the indemnification clause by asserting he was somehow under coercion, duress, or subjected to unequal bargaining power when he executed the contract. Our review of the record shows no compelling factual evidence in support of this assertion. The evidence shows Sky delivered the credit card machine to Saferin's place of business, at his request, at which time he voluntarily executed the standardized credit card agreement. There is no evidence that Sky demanded an immediate signature, threatened adverse consequences if Saferin failed to immediately sign, denied Saferin an opportunity to review the contract, or engaged in any suspect tactics or conduct of the type necessary to undermine the impact of the executed contract.
 {¶ 28} Saferin's attempts at characterizing Sky as having "strong-armed" him into executing the contract are without factual support in the record. The evidentiary test for determining whether an environment of unequal bargaining power existed at the time of the contract execution requires analysis of two criteria. First, it must be shown that the contract at issue contains unreasonable provisions. Second, the party denying contract enforceability must show specific circumstances surrounding the execution of the contract that can be found to have prevented a voluntary meeting of the minds. Mid Am Bank v.Dolin, 6th Dist. No. L-04-1033, 2005-Ohio-3353.
 {¶ 29} Given the guidance set forth above, we now must examine the disputed credit card indemnification provision to determine whether it is unreasonable. The provision states in relevant part, "Merchant further warrants that it is responsible for the actions of its employees while acting in the merchant's employ." The disputed provision is not ambiguous or unreasonable. The plain language of the provision states that the merchant assumes responsibility for the actions of its employees. Such an arrangement is neither controversial nor improper. To hold otherwise would improperly render banking institutions "insurers" of the lawful conduct of their clients' employees.
 {¶ 30} The Supreme Court of Ohio has long upheld the plain language doctrine of contract interpretation. When courts interpret the meaning of disputed contractual provisions, they must presume the intent of the parties is reflected in the language incorporated into the agreement. Kelly v. Medical LifeIns. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. Courts may not exceed the plain language of an agreement when it is clear and unambiguous. Id. at 132. We find the language of the indemnification provision clear and unambiguous. It requires Sky's credit card service clients to accept contractual responsibility for actions of their employees pertaining to the service. It is well-settled by this court that a mere assertion of inequality of bargaining power is not sufficient to establish unconscionability. MidAm Bank v. Dolin,
6th Dist. No. L-04-1033, 2005-Ohio-3353, at ¶ 85.
 {¶ 31} We find the credit card agreement to be clear, unambiguous, and reasonable. There is no evidence Saferin was subjected to coercion, duress, undue pressure, or deceit. There is no indicia of unequal bargaining power between the parties. Appellant's third assignment of error is found not well taken.
 {¶ 32} In appellant's second assignment of error, he claims the trial court erred in granting Sky summary judgment on its claim for attorney fees pertaining to the credit card dispute. In order to examine the legitimacy of this trial court ruling, we must examine a larger portion of the contract's indemnification provision. This provision states, in relevant part:
 {¶ 33} "Merchant expressly agrees to indemnify bank and hold it harmless from and against any liability, claims, damages, losses, costs or expenses (including, without limitation, attorney's fees) arising from or related to any action or omission by merchant in connection with the acceptance or rejection of credit cards."
 {¶ 34} Appellant asserts the trial court's awarding of attorney fees based upon this provision must be rejected because there was unequal bargaining power between the parties so as to undermine the contract. As stated above, we reject this contention. Ohio courts have long acknowledged the fundamental right of freedom to contract and rely upon enforcement of the contracted terms. Blount v. Smith (1967), 12 Ohio St.2d 41, 47. Case law upholding the legitimacy of contract provisions awarding attorney fees are widespread and pervasive, including rulings from this court. Such attorney fees provisions are proper and permissible absent evidence of coercion, duress or other circumstances sufficient to render the contract unconscionable and unenforceable. St. Paul Fire Marine Ins. Co. v. OhioBldg. (Dec. 29, 1989), 6th Dist. No. L-88-337.
 {¶ 35} Legal rulings which undermine the ability of contracting parties to voluntarily agree to assume responsibility for attorney's fees are wholly rejected absent statutory or Supreme Court authority. Nottingdale Homeowners' Assn., Inc. v.Darby (1987), 33 Ohio St.3d 32. We find the attorney fee provision in the underlying credit card agreement to be unambiguous, reasonable, and enforceable. We find no evidence of unequal bargaining power. Appellant's second assignment of error is not well-taken.
 {¶ 36} Appellant's first assignment of error is that the trial court engaged in a "Star Chamber-like procedure" by not conducting an evidentiary hearing in open court to enable Saferin to challenge the reasonableness of the attorney's fees. We find Saferin's position not rooted in law or statute. On the contrary, the Supreme Court of Ohio has long held that the calculation of the proper amount of attorney's fees rests soundly within the trial's court discretion. Bittner v. Tri-County Toyota, Inc.
(1991), 58 Ohio St.3d 143, 146. We may not reverse the trial court's attorney fee amount determination absent a showing of an abuse of discretion. In order to establish abuse of discretion, it must be shown the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 37} Rather than some Machiavellian secret hearing to unfairly determine the amount of attorney fees, the record shows no such abuse of Saferin's rights occurred. The record reveals the parties engaged in full adversarial briefing on the issue, the trial court received supporting documentary evidence including records and affidavits, and the trial court conducted an in-camera inspection and review of all documentation prior to determining the amount.
 {¶ 38} There is nothing in the record showing an abuse of discretion by the trial court in its handling of attorney fees. Appellant's first assignment of error is not well taken.
 {¶ 39} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Parish, J., concur.
Singer, P.J., concurs in Judgment only Judge.