{¶ 82} For the reasons that follow, I agree with the sound and well-reasoned decision of the trial court and would affirm. Based upon the undisputed facts in this case, there are no genuine issues of material fact, and Bank One is entitled to judgment as a matter of law as to the entire claim of the trustees.
 {¶ 83} It is undisputed that, during the entire period of the township clerk, Michael Spellman's, thefts, i.e., from August 1996 until January 2003, Bank One contemporaneously provided to the township trustees monthly statements along with the cancelled checks bearing the trustees' forged signatures. Pursuant to R.C. 1304.35(C), the trustees as the "customer" therefore had the duty to (1) "exercise reasonable promptness in examining the statements] * * * to determine whether any payment was not authorized because * * * a purported signature * * * on behalf of [the *Page 24 
trustees] was not authorized" and the duty to (2) "promptly notify the bank of the relevant facts." Id.
 {¶ 84} Despite the trustees' receipt of the statements, they failed to report the unauthorized signatures on the checks to Bank One until February 27, 2004, the date of the filing of the complaint, more than one year after the last of the relevant statements was sent to them. As a result, under R.C. 1304.35(F), irrespective of whether or not the bank exercised due care, the trustees' claim is time-barred in its entirety.
 {¶ 85} Further, even if the thefts or any of them had been reported within the year of the last statement, the trustees' failure to comply with R.C. 1304.35(C) would have precluded recovery. In 1999, the trustees suspected embezzlement on the part of the clerk. They caused township police detective Eidan to investigate the matter. To that end, Eidan advised Bank One that the trustees suspected embezzlement by the clerk, but never mentioned any unauthorized signatures. Nothing in the record indicates the trustees reported to Bank One any "unauthorized signatures," as required by R.C. 1304.35(C), before February 27, 2004. Eidan asked for copies of the statements, which the bank provided. The trustees advised township police they were not interested in pursuing the investigation, which was then terminated.
 {¶ 86} The majority, in its opinion, holds Bank One is not entitled to summary judgment due to genuine issues of material fact concerning whether it failed to act in good faith or to exercise due care. However, whether the bank acted with due care or in good faith is irrelevant here because the trustees only reported the unauthorized signatures more than one year after the last bank statement. R.C. 1304.35(F). The *Page 25 
good faith and due care provisions of R.C. 1304.35(D) and (E) do not apply because the trustees did not report the forgeries within one year.
 {¶ 87} In failing to report the unauthorized checks within seven years of their discovery by the trustees, I believe that, as a matter of law, the former trustees were derelict in their duties as the "customer" to (1) "promptly examine" and (2) "promptly report" the unauthorized checks.
 {¶ 88} I believe the majority is incorrect when it holds that the various circumstances cited by the trustees created a genuine issue of material fact concerning whether the trustees fulfilled their reporting obligation to the bank under R.C. 1304.35(C). That section places a duty on the trustees as the customer to report the unauthorized signatures to the bank. The deposition testimony of the bank employee that he had read a newspaper account of the clerk's activities sometime in April 2003 cannot as a matter of law relieve the trustees of their duty to report unauthorized signatures to the bank.
 {¶ 89} Further, the grand jury subpoena duces tecum issued by the state to Bank One in January 2003, which includes an exhaustive list of items such as all financial records, documents and signature cards regarding savings accounts, checking accounts, certificates of deposit, repurchase agreements, loan applications, financial statements, loan files, notes, mortgages, credit card accounts, assets pledged, and IRA accounts, would be totally irrelevant to a claim of "unauthorized signatures" and could not provide notice of forgeries. The subpoena cannot be transformed into a presumption that Bank One received prompt notice of unauthorized signatures, as required by R.C. 1304.35(C). *Page 26 
 {¶ 90} This court has held that where a customer fails to exercise reasonable promptness in examining his monthly statements, R.C. 1304.35
"abridges [the depositor's] ability to challenge other forged checks signed by the `same wrongdoer.'" Mueller v. Fifth Third Bank,162 Ohio App.3d 698, 2005-Ohio-4213, at ¶ 31. Thus, even if the relevant period was considered to be, as the majority holds, January 2002 until January 2003, the statute would limit the period within which forgeries could be pursued to thirty days after receipt of the December 2002 statement showing the forgeries. "[This] is because, if the forgeries were all committed by the `same wrongdoer,' but the customer has not fulfilled * * * his duties to `reasonably promptly' examine his statements and notify the bank, then they only have thirty days from the receipt of the statement, not the discovery of the forgery, to report such forgeries." Id.
 {¶ 91} In Mueller this court held the notice provisions of R.C.1304.35 run from the date of the first forgery committed by the "same wrongdoer" and move forward from that date. The notice provisions do not run backward from the date of the last monthly statement so as to provide a one year reach back for late discoveries. In my view the majority is thus incorrect in holding that Bank One may have a claim for checks written between January 2002 and January 2003 because the former trustees, as a matter of law, failed to fulfill their duties under R.C.1304.35(C).
 {¶ 92} This court held in Mueller: "Appellants have failed to demonstrate that a genuine issue of fact exists regarding their duty to inspect the banking statements with reasonable promptness, and, then, to notify the bank of any forgeries. Nor does there exist a genuine issue of material fact with respect to appellants' duty to exercise ordinary care to guard against the possibility of forged signatures. Two years and ten *Page 27 
months, without a satisfactory explanation for such an unusually long delay, exceeds that duty, and, thus, the trial court did not err in entering summary judgment in favor of Fifth Third." Id. at ¶ 38. This holding applies with greater force here in light of the unexplained seven year delay on the part of the trustees in reporting unauthorized signatures to Bank One.
 {¶ 93} R.C. 1304.35(C) required the trustees to exercise reasonable promptness in reporting Spellman's unauthorized signatures. By failing to inform Bank One of the suspected forgeries from 1996 until 2004, the trustees, as a matter of law, failed to promptly report the unauthorized signatures to the bank. By 1999 they had knowledge of the forgeries, while Bank One had no notice of same until February 27, 2004. If the trustees had exercised reasonable promptness, they would have examined the statements, detected the forgeries, reported them to the bank, and stopped Spellman's continued embezzlement. The trustees cannot use this failure to comply with R.C. 1304.35(C) to create a genuine issue of material fact to avoid summary judgment.
 {¶ 94} In view of the foregoing, I respectfully dissent. *Page 1