[Cite as *Leight v. Osteosymbionics, L.L.C.*, 2016-Ohio-110.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102869**

## TROY LEIGHT, ET AL.

PLAINTIFFS-APPELLEES

vs.

## OSTEOSYMBIONICS, L.L.C., ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-835958

**BEFORE:** Blackmon, J., Jones, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** January 14, 2016

**ATTORNEYS FOR APPELLANTS**

Mark R. Koberna
Matthew Romano
Sonkin & Koberna Co., L.P.A.
3401 Enterprise Parkway, Suite 400
Cleveland, Ohio 44122

Mark R. Jacobs
Matasar Jacobs, L.L.C.
1111 Superior Avenue, Suite 1355
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEES**

Michael R. Stavnicky
Andrew Geronimo
T. Christopher O'Connell
Singerman, Mills, Desberg & Kauntz Company
3333 Richmond Road, Suite 370
Beachwood, Ohio 44122

PATRICIA ANN BLACKMON, J.:

**{¶1}**  Defendants-appellants Osteosymbionics, L.L.C. ("the L.L.C."), and Susan J. Zull, Administrator of the Estate of Cynthia M. Brogan[1] ("the Estate") appeal the trial court's denial of their motion to compel arbitration and stay proceedings in this breach of fiduciary duty and fraud case filed by plaintiffs-appellees Troy Leight and John P. Nail. The L.L.C. and the Estate assign the following two errors for our review:

> I.  The trial court erred in denying Appellants' Motion to Dismiss, or in the Alternative, Motion to Compel Arbitration and Stay All Proceedings Pending Arbitration because the claims and allegations Plaintiffs Troy Leight and John P. Nail have asserted against Defendants Osteosymbionics, LLC and Cynthia M. Brogan are covered by a valid and enforceable arbitration provision.

> II.  The trial court erred in granting Appellees' Motion for Leave to File a Sur-Reply Brief in Opposition to the Motion to Dismiss or Stay Arbitration because there was no legitimate basis for Appellees to be permitted to file a Sur-Reply Brief.

**{¶2}**  Having reviewed the record and pertinent law, we affirm the trial court's rulings.  The apposite facts follow.

### The Operating Agreement

**{¶3}**  On October 20, 2006, Brogan, Leight, and Nail entered into an Operating Agreement ("the OA") to form the L.L.C.  The terms and scope of the OA are at the heart of this case; thus, a detailed review of the pertinent parts follows.

---

[1]On September 14, 2015, a suggestion of the death of defendant-appellant Cynthia M. Brogan was filed with the court.    On November 10, 2015, the Estate was substituted as the proper party.

**{¶4}** According to Schedule 5.1 of the OA, the three Members of the L.L.C. are Brogan, a 55% shareholder with 55 units, and Leight and Nail, who are each 22.5% shareholders with 22.5 units apiece. According to §4.4, which is under "Article 4. Management" of the OA, these three Members make up the Board of Managers, with Brogan having two votes and Leight and Nail each having one vote.

**{¶5}** Section 2.14 of the OA defines "Majority Vote," as applied to the Board of Managers, as "the vote of a majority of Manager votes as allocated in accordance with the provisions of Article 4 of this Agreement * * *." "Majority Vote," as applied to Members, is defined as "the vote of the Members holding more than fifty percent (50%) of the Units." Put another way, under the OA, Brogan has the Majority Vote for Member matters but does not for Board of Manager matters.

**{¶6}** Section 3.3, which is titled "Rights of and Limitations on Members," states that "[e]xcept for the rights specifically granted to the Members pursuant to this Agreement, the Board of Managers shall have all of the rights and authorities for governing the Company and its business." Additionally, § 4.1(a) states that [e]xcept as specifically reserved to the Members in this Agreement, the Board of Managers has all power and authority to manage, and direct the management of the business and affairs of the Company, both ordinary and extraordinary."

**{¶7}** Section 4.2 of the OA enumerates the Board of Managers' powers in subsections (a)(i) – (xxiii). Additionally, §4.4 of the OA states, in part, that

> [i]f the Board of Managers is unable to reach agreement to affirmatively adopt a proposal before the Board of Managers concerning the business of

the Company, the payment of any obligation of the Company or the making of distributions to Members, after three (3) consecutive meetings of the Board of Managers at which the proposal is on the agenda, the proposal shall be submitted to arbitration through which it shall be determined whether the proposal is to be adopted as an action of the Company.

**{¶8}** This limited reference to arbitration in Article 4 of the OA is the only reference to arbitration in the document. There is no provision in the OA governing conflict and/or dispute resolution.

**{¶9}** Article 9 of the OA governs amendments, and it states in its entirety as follows:

<u>**AMENDMENT OF THE AGREEMENT**</u>
<u>Amendment by Board of Managers</u>

Except as otherwise specifically provided in this Agreement, the Board of Managers can adopt an amendment to this Agreement to do any one or more of the following:

(a)     To implement or effectuate the provisions of any part of this Agreement or to continue the Company under the laws of the State of Ohio or jurisdiction in which it does business;

(b)     To take any action, on the advice of counsel to the Company, as may be necessary or appropriate to satisfy then current requirements of the [Internal Revenue] Code with respect to partnerships or limited liability companies that have been structured to be classified as partnerships under the Code or any other applicable law or regulation;

(c)      To cure any ambiguity, defect, or inconsistency; or

(d)     To update <u>Schedule 5.1</u> in order to reflect any changes in Members or other Interest Holders, or their Interests, Units or capital contributions.

<u>Section 9.2     — Other Amendments</u>.

Except as specifically provided in <u>Section 9.1</u> or otherwise in this Agreement, any amendment to this Agreement may be made by a Member Vote.

**{¶10}** Furthermore, §3.3 of the OA covers <u>"Rights of and Limitations on Members,"</u> and sub-section (c)(i) states as follows: <u>"Reserved Voting Rights of Members</u>.

By a Member's Majority Vote the Members may: Approve any amendment to this Agreement to the extent required pursuant to <u>Article 9</u> * * *."

## <u>The Amended and Restated Operating Agreement</u>

**{¶11}** On March 18, 2014, Brogan, acting alone, signed an Amended and Restated Operating Agreement ("the AROA"), the first and last paragraphs of which state as follows:

> THIS OPERATING AGREEMENT ("Agreement") is made and entered into as of the 18th day of March, 2014, to be effective January 1, 2014, by Resolution of the Members of the Company, as approved at a special meeting of the Members on March 18, 2014.
>
> * * *
> Pursuant to a Resolution by the Members, as duly adopted on March 18, 2014, the Manager of the Company hereby executes this Agreement.
>
> _____<br>Cynthia M. Brogan, Manager

**{¶12}** The AROA amends the OA in several significant ways, including eliminating the Board of Managers, making Brogan the sole Manager, vesting the Manager with "full, exclusive, and complete discretion, power, and authority * * * to manage, control, administer, and operate the business and affairs of the Company," and giving the Manager irrevocable power of attorney over all Members. Additionally, and

specifically pertinent to this appeal, §11.11 of the AROA adds an arbitration clause, which states in part that "[a]ll controversy or claim [sic] arising out of or relating to this Agreement, or to the interpretation, breach, or enforcement thereof, * * * shall be submitted to three (3) arbitrators * * *."

## Procedural History

{¶13} On November 14, 2014, Leight and Nail filed this action against the L.L.C. and Brogan, alleging breach of fiduciary duty, fraud, civil conspiracy, and freeze-out. Essentially, Leight and Nail allege that Brogan mismanaged, and improperly exercised control over the L.L.C., including "attempt[ing] to unilaterally change the operating agreement and governing documents of the Company to benefit herself."

{¶14} On January 21, 2015, the L.L.C. and Brogan filed a "motion to dismiss, or in the alternative, motion to compel arbitration and to stay all proceedings pending arbitration." The trial court granted Leight and Nail's request for leave to file a sur-reply brief regarding the L.L.C. and Brogan's alternative motions. On April 2, 2015, the court denied the L.L.C.'s motions to compel arbitration and stay proceedings. It is from this these rulings that the L.L.C. and the Estate appeal. We address their assigned errors out of order.

## Final Appealable Order — Motion to Compel Arbitration

{¶15} Leight and Nail argue that there is no written agreement to arbitrate in this case; therefore, there is no final appealable order. According to R.C. 2711.02(C), "an order * * * that grants or denies a stay of a trial of any action pending arbitration * * * is a

final order and may be reviewed, affirmed, modified, or reversed on appeal * * *." Whether there is an agreement, written or otherwise, to arbitrate is the crux of this case. "The appeal of the denial of [a] motion to stay and compel arbitration is a final appealable order." *Cantie v. Hillside Plaza*, 8th Dist. Cuyahoga No. 99850, 2014-Ohio-822, ¶ 10.

{¶16} Accordingly, we find that the court's denial of the L.L.C. and the Estate's motion to compel arbitration and stay trial proceedings is a final appealable order.

### Final Appealable Order — Motion for Leave

{¶17} As to the court's granting Leight and Nail's motion for leave to file a sur-reply brief, we find that this order is interlocutory, and thus not a final appealable order. *See River Oaks Homes, Inc. v. Krann*, 11th Dist. Lake No. 2008-L-166, 2009-Ohio-5208, ¶ 35-40 (finding that, absent Civ.R. 54(B) language, the order denying a motion to amend the complaint was interlocutory and neither final nor appealable, despite jurisdiction being proper for the court to review the order staying the trial and referring the matter to arbitration).

{¶18} Accordingly, the L.L.C. and the Estate's second assigned error is dismissed for lack of jurisdiction.

### Standard of Review

{¶19} The parties to this action disagree about the standard of review. The L.L.C. and the Estate argue that a de novo standard of review applies to questions regarding whether a party has agreed to submit an issue to arbitration. *See Skerlec v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga No. 98247, 2012-Ohio-5748, ¶ 6 ("The issue of

whether a party has agreed to submit an issue to arbitration [is] reviewed under a de novo standard").  Leight and Nail, on the other hand, argue that the standard of review for the denial of a stay pending arbitration is an abuse of discretion.  *See Bentley v. Cleveland Browns Football Co.,* 194 Ohio App.3d 826, 2011-Ohio-3390, 958 N.E.2d 585, ¶ 10 (8th Dist.) ("[i]n determining whether the trial court properly denied or granted a motion to stay the proceedings and compel arbitration, the standard of review is whether the order constituted an abuse of discretion").

**{¶20}** As this case turns on questions of law, and the trial court has made no factual findings, we review the denial of the motion to compel arbitration and stay proceedings under a de novo standard.

### Motion to Compel Arbitration

**{¶21}** In the L.L.C. and the Estate's first assigned error, they argue that the OA permitted Brogan to make amendments without the express, affirmative vote from Leight and/or Nail; that Leight and Nail failed to object to Brogan's amendments and the AROA; and the claims at issue are covered under the arbitration clause in the AROA.  In the alternative, the L.L.C. and the Estate argue that the "arbitration provision" in the OA covers Leight and Nail's allegations in this case.

**{¶22}** We reject the L.L.C. and the Estate's argument that Leight and Nail failed to object to the amendments at issue and the AROA.  There is no provision in the OA requiring minority members of the L.L.C. to object to amendments, and the L.L.C. and Brogan cite no legal authority requiring an objection outside of a court of law.  Leight

and Nail challenged the amendments at issue and the AROA by suing the L.L.C. and Brogan, and we find this "objection" sufficient.

## The claims at issue are not subject to arbitration under the OA

{¶23} While it is undisputed that Brogan, Leight, and Nail agreed to and signed the OA, there is no blanket or umbrella arbitration clause in the OA. Arbitration is mentioned only in §4.4 of the OA, which limits arbitrable issues to when the Board of Managers is unable to reach an agreement to adopt a proposal concerning 1.) The business of the L.L.C., 2.) The payment of any obligation of the L.L.C., or 3.) The making of distributions to Members.

{¶24} The claims at issue in this case generally concern Brogan's alleged mismanagement of the L.L.C., as well as whether Brogan was acting within her authority as a Member of the L.L.C. and under the scope of the OA, when she executed the AROA. Allegations of mismanagement, including embezzlement of funds and using "business assets to promote and further [Brogan's] own personal * * * welfare," certainly are not "proposals" upon which the Board of Managers could not reach agreement.

{¶25} Additionally, the L.L.C. and the Estate's argument in favor of arbitration is based on Brogan's act of amending the OA — and thus creating the AROA — being proper "pursuant to the procedures and rights that the parties agreed should be reserved for Brogan as majority member of the Company." Indeed, it would be inconsistent for the L.L.C. and the Estate to argue that Brogan's power to amend and create the AROA is a "Board of Manager proposal," because she did not have the Board of Managers

majority vote under the OA. The AROA itself concedes this point, because expressly states that it is "made and entered into * * * by Resolution of the Members of the Company, as approved at a special meeting of the Members * * *."

{¶26} Accordingly, none of the claims at issue in the case at hand are subject to arbitration under the OA, because none of the claims stem from the Board of Managers being unable to reach agreement on a proposal.

**Whether the claims at issue are subject to arbitration under the AROA depends on whether Brogan had the authority to amend the OA**

{¶27} Prior to determining the arbitrability of Leight and Nail's claims under the AROA, we must determine whether the parties agreed to arbitrate. *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203. "Ohio courts recognize a presumption in favor of arbitration when a claim falls within the scope of an arbitration provision. But significantly, there is a counterweighing presumption against arbitration when a party seeks to invoke an arbitration against a nonsignatory." *Id.* at ¶ 21 (citations omitted).

{¶28} Under the unique facts of the instant case, the question of whether the parties agreed to arbitrate cannot be addressed without also considering whether Brogan's unilaterally amending the OA authorized the addition of an arbitration clause that was not contemplated by the parties at the time they signed the OA.

**{¶29}** We find that, although the facts differ somewhat, the legal analysis in *Maestle v. Best Buy Co.*, 8th Dist. Cuyahoga No. 79827, 2005-Ohio-4120, applies to the issues in the case at hand.

**{¶30}** *Maestle* involved a group of consumers who had Best Buy credit card agreements with Bank One. These agreements did not contain arbitration provisions; however, they did allow Bank One to unilaterally amend or change the terms with proper notice to the cardholders. Bank One's successor company, GE Capital, subsequently amended the agreements to add an arbitration clause. *Id.* at ¶ 11-13.

**{¶31}** Maestle sued on behalf of similar cardholders, and Best Buy filed a motion to compel arbitration, arguing "that an arbitration clause may be unilaterally added to a cardholder agreement through the change-in-terms provision so long as they follow the proper procedure." *Id.* at ¶ 14. The cardholders "contend that the change-in-terms provision does not contemplate wholly new terms and therefore the arbitration clause is invalid and unenforceable." *Id.*

**{¶32}** Applying basic contract law, the *Maestle* court found that "the threshold question is whether the parties agreed to arbitrate." *Id.* at ¶ 21. "When there is a question as to whether a party has agreed to an arbitration clause, there is a presumption against arbitration." *Id.* at ¶ 22. *See also Council of Smaller Ent. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1998) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. * * * This axiom recognizes the fact that arbitrators derive their

authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration.") (citation omitted).

**{¶33}** The *Maestle* court continued its analysis "on the basis of ordinary contract principles":

> [T]o have a valid contract, there must be a 'meeting of the minds' on the essential terms of the agreement, which is usually demonstrated by an offer, acceptance, and consideration. * * * [T]he essential terms of the contract, usually contained in the offer, must be definite and certain. Ohio law continues to hold that the parties bind themselves by the plain and ordinary language used in the contract unless those words lead to a manifest absurdity. This is an objective interpretation of contractual intent based on the words the parties chose to use in the contract. * * * [The cardholders] could not anticipate that [Bank One/GE Capital] would amend the agreement to add an arbitration clause * * *. Furthermore, nowhere in the contract is there a clause addressing forums of dispute. * * * Hence, there was no 'meeting of the minds" as to inclusion of the arbitration clause at the inception of the contract.

*Id.* at ¶ 23-28.

**{¶34}** The *Maestle* court concluded that the arbitration clause at issue was invalid and unenforceable and found that the trial court did not err when it denied the stay. *Id.* at ¶ 29.

**{¶35}** The most glaring difference between the facts of *Maestle* and the facts before this court in the case at hand is the type of contract at issue. In *Maestle*, a lending institution was trying to enforce a unilateral amendment to a credit card agreement against consumers. In the case at hand, the majority Member of an L.L.C. is trying to enforce a unilateral amendment to an operating agreement against the minority Members.

**{¶36}** Although the types of contracts differ between *Maestle* and the case at hand, the parties to both cases had equal bargaining power. *See Creative Hardwood Floors v. Schafer*, 5th Dist. Fairfield No. 97-CA-56, 1998 Ohio App. LEXIS 1959 (Mar. 24, 1998) ("[C]ontracts between a bank and its customers are generally not considered adhesion contracts, as the parties are considered to have equal bargaining power"); *Saferin v. Sky Bank Mid Am Region*, 6th Dist. Lucas No. L-05-1091, 2006-Ohio-466, ¶ 35 (finding "the underlying credit card agreement to be unambiguous, reasonable, and enforceable [with] no evidence of unequal bargaining power.") As for the parties in the instant case, there is nothing in the record to show that Brogan, Leight, and Nail approached the L.L.C.'s operating agreement with anything but sophisticated and equal bargaining strength.

**{¶37}** Accordingly, we find that the parties in *Maestle* and the parties in the case at hand all had equal bargaining power, and the difference between the type of contract in the two cases is without distinction.

**{¶38}** Pursuant to the plain language of the OA, Brogan did not have the authority to act unilaterally as the Board of Managers. Furthermore, in the L.L.C. and the Estate's appellate brief, they argue that the AROA was adopted at a "Member Meeting" and approved by Brogan as the majority Member of the L.L.C. Therefore, Brogan's authority to unilaterally amend the OA could only have arisen, if at all, from § 9.2 as the majority Member. Once again, § 9.2 states as follows: "Except as specifically provided in Section 9.1 or otherwise in this Agreement, any amendment to this Agreement may be made by a Member Vote."

**{¶39}** Interpreting the meaning and scope of §9.2 of the OA as giving Brogan unfettered authority to amend the OA amounts to the assumption that Leight and Nail agreed ahead of time to be bound by any change Brogan chose to make. This is particularly concerning because there is no procedural or notice provision in the OA that the majority Members — in this case, Brogan — must follow before amending the OA. *See generally Badie v. Bank of Am.*, 79 Cal.Rptr. 2d 273, 281 (1998) (California cases "do not support the proposition that a party with the unilateral right to modify a contract has carte blanche to make any kind of change whatsoever as long as a specified procedure is followed.")

**{¶40}** Upon review, we find that there was no meeting of the minds regarding arbitration as the binding method of alternative dispute resolution in this case. Without a meeting of the minds, there is no agreement, and as the Ohio Supreme Court has held, a party cannot be forced to arbitrate a dispute which he or she did not agree to arbitrate. *Council of Smaller Ent.*, at 665. Therefore, the arbitration clause in the AROA is invalid and unenforceable. We find no error in the trial court's denial of the L.L.C. and Brogan's motion to compel arbitration, and their second assignment of error is overruled.

**{¶41}** Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

LARRY A. JONES, SR., A.J., and
MELODY J. STEWART, J., CONCUR