TAYLOR, SUPT., APPELLEE, *v*. ERNST & YOUNG, L.L.P., APPELLANT.

[Cite as *Taylor v. Ernst & Young, L.L.P.*,

130 Ohio St.3d 411, 2011-Ohio-5262.]

*Insurance—Liquidation of insolvent insurance company—Superintendent of insurance as liquidator not bound by insurer's arbitration agreement.*

(No. 2010-1324—Submitted May 25, 2011—Decided October 18, 2011.)

APPEAL from the Court of Appeals for Franklin County, No. 09-AP-949,

189 Ohio App.3d 60, 2010-Ohio-2731.

_____

SYLLABUS OF THE COURT

1. The Ohio superintendent of insurance, in her capacity as the liquidator of an insolvent insurer, is not a mere successor in interest of an insolvent insurer.

2. The Ohio superintendent of insurance, as liquidator of an insolvent insurance company, is not bound by an agreement to arbitrate that was entered into by the insolvent insurer when her claims do not arise from the contract containing the arbitration clause.

3. An insurance company does not have the authority to bind the liquidator of the company to arbitrate preference or fraudulent-transfer claims.

_____

O'CONNOR, C.J.

{¶ 1} This appeal involves the question of whether the superintendent of insurance, in her capacity as the liquidator of an insolvent insurer, is bound by an agreement to arbitrate that was entered into by an insolvent insurer in cases in which the liquidator does not disavow the contract that contains the arbitration clause. For the reasons explained below, we hold that the liquidator is not bound

by the insolvent insurer's agreement when the liquidator's claims do not arise from the contract that contains the arbitration provision. Accordingly, we affirm the judgment of the court of appeals but in part for different reasons, as explained below.

## I. RELEVANT BACKGROUND

{¶ 2} For purposes of this appeal, the facts are as stated in the complaint and the motion to dismiss. Ernst & Young ("E&Y"), an independent accounting firm, provided auditing services to American Chambers Life Insurance Company ("ACLIC") for the year ending December 31, 1998. The audit was undertaken pursuant to an engagement letter signed by E&Y and ACLIC[1] that contained an arbitration clause. On February 25, 1999, E&Y submitted a report to the Ohio Department of Insurance ("ODI") that certified that it had conducted the audit in accordance with generally accepted auditing standards and that ACLIC's financial statements presented fairly, in all material respects, ACLIC's financial position.

{¶ 3} On March 13, 2000, the superintendent filed an action in the Franklin County Common Pleas Court that sought, at first, to place ACLIC in rehabilitation. On May 8, 2000, the court issued a final liquidation order based on ACLIC's insolvency. During the liquidation proceedings, the liquidator entered into a tolling agreement with E&Y whereby each side agreed to toll the time for filing causes of action and claims against the other side until one year from May 2, 2002.

{¶ 4} On April 30, 2003, the liquidator filed this action in the Franklin County Common Pleas Court against E&Y.[2] The liquidator alleged two claims

---

1. The engagement letter was actually signed by the president of ACLIC's parent company, United Chambers Administrators, Inc., on behalf of it and ACLIC, "collectively, the Company." The liquidator accepts that for all relevant purposes, ACLIC is a signatory of the letter.

2. The suit also named a law firm, Foley & Lardner, and an attorney, Michael H. Woolever, as defendants. Only the claims against E&Y are relevant to this discussion; no other defendant is a party to this appeal.

against E&Y. In one claim, she alleged that E&Y had "negligently failed to perform its duties as the independent certified public accountant retained to conduct the audit of ACLIC's December 31, 1998, Annual Statement, thus breaching the duties owed." Specifically, the liquidator alleged that E&Y had failed to conduct its audit according to generally accepted auditing standards and had failed to discover or disclose material misstatements in ACLIC's financial statements, such as understatement of loss reserves, overstatement of receivables, unrecorded liabilities, and investments that exceeded the allowable amounts. That breach, she alleged, allowed ACLIC's financial condition to go undetected and, consequently, allowed it to continue transacting business, causing harm to ACLIC, its policyholders and creditors, and the public.

{¶ 5} In another claim, the liquidator alleged that E&Y had received preferential or fraudulent payments of more than $25,000. Specifically, she alleged that E&Y received a sum of money from ACLIC after March 13, 1999, when ACLIC was insolvent, and that E&Y had refused to return the money, notwithstanding the liquidator's demand for it. Consequently, the liquidator alleged, E&Y had obtained a greater percentage of its debt than other creditors of the same class would receive in the distribution of ACLIC's estate.

{¶ 6} On July 15, 2003, E&Y moved to dismiss the complaint or to stay the proceedings and compel arbitration based on the arbitration clause contained in the engagement letter. The trial court denied the motion, and E&Y appealed. The Tenth District Court of Appeals affirmed. *Hudson v. Ernst & Young, L.L.P.,* 189 Ohio App.3d 60, 2010-Ohio-2731, 937 N.E.2d 585, at ¶ 39.[3] That court held that because the liquidator had not signed the arbitration agreement, there was a presumption against arbitration. Id. at ¶ 16. It then held that the presumption could never be overcome because the General Assembly did not contemplate

---

3. Mary Jo Hudson was a predecessor in office of appellee, Mary Taylor.

liquidation proceedings being turned over to private arbitrators. Id. at ¶ 18. In other words, the Tenth District held that there is an irreconcilable conflict between the Ohio Liquidation Act and the Ohio Arbitration Act and that the Liquidation Act prevails. Id.

{¶ 7} This court accepted E&Y's discretionary appeal, which sets forth two propositions of law: (1) "An insurance liquidator that does not disavow a contract entered into by an insurer is bound by an arbitration provision in that contract, which must be enforced pursuant to Ohio's statutory code and strong policy favoring arbitration," and (2) "A tolling agreement that preserves 'all defenses' as of its effective date preserves an arbitration defense that existed on the effective date." We address each proposition in turn.

{¶ 8} Although the liquidator did not agree to arbitrate any claims and is not a signatory to the engagement letter that contains the arbitration provision, E&Y nonetheless argues that the liquidator is bound by the arbitration clause for three reasons. First, E&Y asserts that the liquidator stands in the shoes of the insolvent insurer. In the alternative, E&Y contends that because the liquidator is asserting claims that are based on and arise out of the contract that contains the arbitration clause, she is bound by the arbitration provisions. Finally, E&Y argues that the Liquidation Act does not permit the liquidator to disavow the arbitration clause while enforcing the balance of the contract.

{¶ 9} The liquidator rebuts each assertion. First, she denies that she stands in the shoes of the insolvent insurer. Rather, she stands in a unique public-protection role. Second, she argues that she is not asserting claims that are based on or arise out of the contract but, rather, that she is bringing claims that arise from both her statutory powers and certain financial statements and audit certifications filed in the public record by ACLIC and E&Y. Therefore, she argues, her disavowal powers are not implicated. Finally, in the alternative she asserts that there is an irreconcilable conflict between the Liquidation Act and the

Arbitration Act and that the Liquidation Act must prevail. We proceed with the analysis of E&Y's arguments and begin our discussion with an overview of the Ohio Liquidation Act.

## II. ANALYSIS

### A. The Ohio Liquidation Act

{¶ 10} The Insurers Supervision, Rehabilitation, and Liquidation Act (the "Liquidation Act"), codified in R.C. Chapter 3903, "confer[s] upon the Superintendent and a trial court broad discretionary and equitable powers relating to the supervision, rehabilitation and liquidation of insurance companies." *Fabe v. Prompt Fin., Inc.* (1994), 69 Ohio St.3d 268, 273, 631 N.E.2d 614. Through the Liquidation Act, the General Assembly established "a comprehensive framework governing the liquidation of insurance companies operating in Ohio," *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 16, through which the liquidator is empowered "to protect the rights of insureds, policyholders, creditors, and the public generally." *Fabe*, 69 Ohio St.3d at 275. R.C. 3903.02(D). We must liberally construe the Liquidation Act to effectuate that purpose. R.C. 3903.02(C).

{¶ 11} The Liquidation Act grants the superintendent three levels of oversight of the insurance industry apart from her usual regulatory powers. First, R.C. 3903.09 confers on the superintendent power to identify and supervise a potentially troubled insurer by requiring it to get her permission before engaging in certain business transactions, such as disposing of assets or investing funds. Second, R.C. 3903.12 grants the superintendent the power, with the court's permission, to attempt to rehabilitate an insurer in such a poor financial condition that its further transaction of business would be financially hazardous to its policyholders, creditors, or the public. Third, R.C. 3903.16(A) and 3903.17 grant the superintendent the power, with the court's permission, to liquidate an insurer if, for example, it is insolvent. When the superintendent believes that an

insurance company is insolvent, she may file a complaint for liquidation. R.C. 3903.17(B). When issued, a final order for liquidation appoints the superintendent as liquidator and directs her to use her broad, statutory powers to marshal assets of the insolvent insurer in the liquidation court and to administer the assets under the general supervision of that court. R.C. 3903.18(A). To that end, the liquidator maximizes the insolvent insurer's estate; she then reviews, prioritizes, and pays claims to the extent possible. *Benjamin v. Pipoly*, 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50, ¶ 28; R.C. 3903.42.

{¶ 12} R.C. 3903.21 contains a nonexclusive list of the powers given to the liquidator to accomplish these tasks. Among other things, she may "[c]onduct public and private sales of the property of the insurer," R.C. 3903.21(A)(7); "[e]nter into such contracts as are necessary to carry out the order to liquidate, and * * * affirm or disavow any contracts to which the insurer is a party," R.C. 3903.21(A)(11); and sell, encumber, or otherwise dispose of the insurer's property, R.C. 3903.21(A)(9). In addition to 23 enumerated powers set forth in the act, the liquidator has authority to do whatever is "necessary or appropriate for the accomplishment of or in aid of the purpose of liquidation." R.C. 3903.21(B). Indeed, as other courts recognize, this statutory scheme is "abounding in features designed to vest within the liquidator broad and largely unfettered powers, under the supervision of the courts, to maximize the assets available to her in discharging her duties to claimants, shareholders, and creditors of the insolvent insurance company." *Pipoly* at ¶ 28.

{¶ 13} In contrast to the liquidator's broad powers, creditors have limited rights to file claims against the insurer's estate. R.C. 3903.24(A) and 3903.35 through 3903.44. With the issuance of a liquidation order, claims of creditors against the insolvent insurer are extinguished by operation of law and replaced by a right to seek redress in the liquidation court. Id. Those claims must be filed by a date specified by the liquidator, regardless of the underlying statute of

limitations that would have applied if the claimant had sued the insurer in ordinary litigation. R.C. 3903.22(B) and 3903.36.

{¶ 14} Subject to judicial review, the liquidator investigates, values, and approves or denies claims filed against the estate. See, e.g., *Covington v. Am. Chambers Life Ins. Co.*, 150 Ohio App.3d 119, 2002-Ohio-6165, 779 N.E.2d 833, ¶ 26. She then sorts the payable claims according to nine statutory classes. R.C. 3903.42(A) through (I). The Liquidation Act establishes priority among the classes and prescribes that each claimant of the first class be paid in full before the claimants of the second class are paid at all, and so on. R.C. 3903.42. Finally, the statutory scheme provides for setoff when the estate has a cause of action against a claimant. R.C. 3903.30.

{¶ 15} The General Assembly designed the Liquidation Act to be centralized in order to enhance efficiency. R.C. 3903.02(D)(3). The general rule is that all liquidation actions brought pursuant to R.C. 3903.01 to 3903.59 "shall be brought in the court of common pleas of Franklin county" (the "liquidation court"). R.C. 3903.04(E). While the Liquidation Act itself contains a reiteration that the liquidation court has jurisdiction over preference claims, R.C. 3903.28(G), and liquidation complaints, R.C. 3903.04(B), elsewhere it sets forth limited exceptions under which the liquidator may select a forum other than the liquidation court. R.C. 3903.21(A)(6) (establishing that as part of her power to collect debts of the insolvent insurer, the liquidator may "[i]nstitute timely action in other jurisdictions"), R.C. 3903.21(A)(12) (establishing that the liquidator has the power to "[c]ontinue to prosecute and to commence * * * any and all suits and other legal proceedings, in this state or elsewhere"), and R.C. 3903.41(A)(2) (establishing that the court has the power to put the question of a security's value to arbitration).

{¶ 16} The liquidator's power of forum selection stands in sharp contrast to the creditors' limited right to file suits in the liquidation court only. R.C.

3903.24(A) (establishing that upon the issuance of a liquidation order, "no civil action shall be commenced against the insurer or liquidator, whether in this state or elsewhere, nor shall any such existing actions be maintained or further prosecuted"). In short, when allowed, forum selection belongs to the liquidator and the liquidator alone.

{¶ 17} Here, E&Y seeks to remove the entire action filed by the liquidator in the liquidation court to arbitration. We turn our discussion to the arbitration law, which E&Y relies upon in support of its position.

## B. The Ohio Arbitration Act

{¶ 18} The Ohio Arbitration Act ("OAA") provides: "A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A). The language of the OAA tracks the language of the Federal Arbitration Act ("FAA"), which provides: "[A] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 2, Article 9, U.S.Code. The OAA expresses Ohio's strong public policy favoring arbitration, which is consistent with federal law supporting arbitration. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 26, fn. 1.

{¶ 19} The FAA was enacted in 1925 " 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.' " *Equal Emp. Opportunity Comm. v. Waffle House* (2002), 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755, quoting *Gilmer v. Interstate/Johnson Lane Corp.* (1991), 500 U.S. 20, 24,

111 S.Ct. 1647, 114 L.Ed.2d 26. The purpose was " 'to make arbitration agreements as enforceable as other contracts, but not more so.' " Id. at 294, quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co* (1967), 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270, fn. 12. Therefore, the FAA " 'does not require parties to arbitrate when they have not agreed to do so.' " Id. at 293, quoting *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.* (1989), 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488; see also id. at 294 (holding that the FAA is, at its core, a policy of enforcing contractual arrangements).

{¶ 20} Consistently, this court has held: " ' "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration.' " *Council of Smaller Ents. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 665, 687 N.E.2d 1352, quoting *AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 648-649, 106 S.Ct. 1415, 89 L.Ed.2d 648, quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409. Accordingly, when deciding motions to compel arbitration, the proper focus is whether the parties actually agreed to arbitrate the issue, i.e., the scope of the arbitration clause, not the general policies of the arbitration statutes. *Waffle House* at 294. It follows that although any ambiguities in the language of a contract containing an arbitration provision should be resolved in favor of arbitration, the courts must not "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." Id.

{¶ 21} For these reasons, Ohio courts recognize a presumption in favor of arbitration when a claim falls within the scope of an arbitration provision.

*Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859. But significantly, there is a counterweighing presumption against arbitration when a party seeks to invoke an arbitration provision against a nonsignatory. *Council of Smaller Ents.* at 667, citing *First Options of Chicago, Inc. v. Kaplan* (1995), 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985. In the latter instance, "there is serious doubt that the party resisting arbitration has empowered the arbitrator to decide anything * * *." Id.

### C. The Liquidator Is Not Bound by the Arbitration Clause

#### 1. *The liquidator does not stand in the shoes of an insolvent insurer, but in a public-protection role*

{¶ 22} We first address E&Y's argument that the liquidator is bound by the arbitration agreement, like a signatory, because she stands in the shoes of a signatory, ACLIC. We hold that the liquidator does not stand in the shoes as a mere successor in interest of the insolvent insurer. Consequently, she is not bound to arbitration agreements entered into by the insolvent insurer as if she were the signatory insurer.

{¶ 23} Our holding is in accord with the United States Supreme Court's jurisprudence on arbitration. See, e.g., *Waffle House,* 534 U.S. at 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (holding that the Equal Employment Opportunity Commission is not bound by an arbitration agreement between an employer and employee). In *Waffle House*, the Equal Employment Opportunity Commission ("EEOC") filed an enforcement action against Waffle House based on alleged unlawful employment practices relating to the discharge of an employee who had health problems. Id. at 283. When the employee applied for the job, he signed a standard Waffle House application that contained an agreement to arbitrate any disputes or claims that might develop regarding his potential future employment. Id. at 282-283. He was hired and fired and filed a timely charge of discrimination with the EEOC—but did not seek arbitration.

{¶ 24} In its suit, the EEOC sought injunctive relief to " 'eradicate the effects of [the employer's] past and present unlawful employment practices' " and also sought victim-specific relief for the employee, including back pay, reinstatement, compensatory damages, and punitive damages. Id. at 283-284. Waffle House moved to compel arbitration based on the arbitration agreement between it and the employee.

{¶ 25} The court initially noted that the federal circuits that had dealt with the issue had come to conflicting conclusions. The Sixth Circuit was among the circuits that had addressed the issue and decided that an employee's agreement to arbitrate does not affect the EEOC's independent statutory authority to pursue an enforcement action, even for victim-specific relief. Id. at 285, citing *EEOC v. Frank's Nursery & Crafts, Inc.* (C.A.6, 1999), 177 F.3d 448. The court agreed with the Sixth Circuit and held that the arbitration agreement between the employee and the employer did not bind the EEOC for the simple reason that the EEOC was not a party to the agreement. Id. at 294. In so holding, it rejected the argument that the EEOC stands in the shoes of aggrieved employees, reasoning that "the statute specifically grants the EEOC exclusive authority over the choice of forum and the prayer for relief once a charge has been filed." Id. at 297-298. The court further explained that it had previously recognized several situations in which the EEOC does not stand in the employee's shoes when it held that the EEOC does not have to comply with statutes of limitations or certain civil rules. Finally, the court explained that although the employee's actions are relevant in the application of the principles of res judicata, mootness, and mitigation, that relevancy does not "render the EEOC a proxy for the employee." Id. at 298.

{¶ 26} Similarly, the characteristics of the liquidator's public-protection role confirm that she does not stand in the shoes of the insolvent insurer. The liquidator, like the EEOC, has the exclusive choice of forum (when there is a choice). R.C. 3903.21(A)(6)(a), 3903.21(A)(12), and 3903.41(A)(2). She

similarly enjoys the sole discretion to pursue or forgo claims, which is independent of the shareholders' desires and subject instead to judicial approval. R.C. 3903.21(A)(12). Finally, the ordinary statutes of limitations do not apply in the liquidation context to the liquidator or to the estate's creditors. R.C. 3903.24(B), 3903.22(B), and 3903.36. The fact that any judgments in favor of the liquidator accrue to the benefit of insureds, policyholders, and creditors means that the liquidator's unique role is one of public protection, and one that is even more so than the EEOC's. We therefore reject E&Y's argument that she is bound by an insolvent insured's act of signing the arbitration agreement.

{¶ 27} In doing so, we also reject E&Y's argument that *Shearson/Am. Express, Inc. v. McMahon* (1987), 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185, justifies the opposite result. In *Shearson*, two private parties entered into an arbitration agreement. One signatory sued the other for alleged violations of the federal Securities Exchange Act and the Racketeer Influenced and Corrupt Organizations Act. The Security Exchange Act provided for exclusive jurisdiction in the federal district courts over claims brought under it. Section 27, Title 15, U.S.Code. The United States Supreme Court held that the exclusive jurisdictional provisions did not preclude arbitration. Id. at 227.

{¶ 28} In contrast to *Waffle House*, as well as this case, *Shearson* involved signatories of an arbitration agreement. A material fact in *Waffle House* was that the EEOC was not a signatory to the arbitration agreement. *Waffle House,* 534 U.S. at 294, 122 S.Ct. 754, 151 L.Ed.2d 755 ("It goes without saying that a contract cannot bind a nonparty. Accordingly, the proarbitration policy goals of the FAA do not require the agency to relinquish its statutory authority if it has not agreed to do so"). Therefore, *Shearson* is inapposite.

{¶ 29} E&Y also relies on *Benjamin v. Ernst & Young*, 167 Ohio App.3d 350, 2006-Ohio-2739, 855 N.E.2d 128. The dispute in *Benjamin* was part of this ongoing litigation between E&Y and the liquidator. Id. at ¶ 1. The Tenth District

Court of Appeals decided *Benjamin* while E&Y's motion to compel arbitration (at issue in this case) was pending before the Franklin County Common Pleas Court. It is of limited persuasive value here, given its posture. Moreover, *Benjamin* undermines, rather than supports, E&Y's arguments. *Benjamin* is the result of a motion filed by a law firm, Foley & Lardner, and one of its attorneys, Michael J. Woolever (collectively, "Foley"), that sought to remove the case to the Ohio Court of Claims. Id. at ¶ 1. Foley asserted counterclaims against the superintendent based on her alleged failure "to act to protect the policyholders, creditors, and the public," thereby causing the injuries for which the liquidator was seeking to recover from E&Y and Foley. Id. at ¶ 5. The Court of Claims held that the counterclaims "were not asserted against the superintendent in her capacity as liquidator of ACLIC, but, rather, were asserted against the superintendent in her regulatory capacity * * * based on actions that allegedly occurred [before] the liquidation of ACLIC." Id. at ¶ 7. Therefore, the Court of Claims granted the liquidator's motion to dismiss the counterclaims because "[a] counterclaim may only be asserted against an opposing party and only against that party in the capacity in which that party sued." Id., citing *Quintus v. McClure* (1987), 41 Ohio App.3d 402, 536 N.E.2d 22. As a result, the Court of Claims remanded the case to the Franklin County Common Pleas Court. Id. at ¶ 2. E&Y appealed the decision of the Court of Claims.[4] Id.

{¶ 30} In affirming, the Tenth District explained that the "superintendent as liquidator is a separate entity from the superintendent as regulator." Id. at ¶ 19. In attempting to make the distinction, that court stated that the superintendent as liquidator "stands in the shoes of the insolvent insurer." Id. at ¶ 18. Nonetheless, it more fully explained: "Any benefits received from a judgment or settlement in

---

4. Foley ended up partially settling the liquidator's claims against it and, consequently, did not pursue its appeal of the Court of Claims decision. *Benjamin*, 167 Ohio App.3d 350, 2006-Ohio-2739, 855 N.E.2d 128, at ¶ 2-4.

an action initiated by the liquidator accrue to the sole benefit of the members, shareholders, policyholders, and creditors of the insured, not to the state of Ohio." Id.

{¶ 31} E&Y's argument in this case is fatally flawed for the same reason that Foley's failed in *Benjamin*—that is, its argument that the liquidator is, in essence, ACLIC, is inconsistent with the nature of the liquidator's claims. Any assertion that the liquidator is a mere successor in interest who is bringing breach-of-contract claims on behalf of ACLIC ignores the fact that the superintendent did not bring this suit on behalf of ACLIC and its shareholders but, rather, in her capacity as liquidator of ACLIC for the protection of "the rights of insureds, policyholders, creditors, and the public generally." *Fabe v. Prompt Fin., Inc.*, 69 Ohio St.3d at 275, 631 N.E.2d 614.

{¶ 32} Notwithstanding E&Y's claim to the contrary, this case presents a garden-variety attempt to enforce an arbitration clause against a nonsignatory. Therefore, there is a presumption against arbitration in this case. See *Council of Smaller Ents.*, 80 Ohio St.3d at 667, 687 N.E.2d 1352. Because that presumption applies here, we must respect it, absent a showing to the contrary.

*2. The liquidator's claims do not arise from the engagement letter*

{¶ 33} E&Y's asserts that the arbitration agreement is enforceable against the liquidator because her claims "relate to" the subject matter of the engagement letter. This is not the applicable test.[5] The test is whether the liquidator, a nonsignatory, has asserted claims that arise from the contract containing the arbitration clause. See, e.g., *Gerig v. Kahn*, 95 Ohio St.3d 478, 2002-Ohio-2581, 769 N.E.2d 381, ¶ 19. Consistent with our precedent, we conclude that the

---

5. The test that E&Y urges the court to apply is the test for signatories, based on the broad language of this specific arbitration agreement. The agreement provides that all claims "related to" the services covered in the engagement letter shall be arbitrated. If one signatory were attempting to enforce the arbitration clause against the other signatory, the court would look to the contract language and determine whether the parties agreed to arbitrate the relevant dispute. That is not, however, the test for a nonsignatory.

presumption against arbitration is not overcome, because neither of the liquidator's claims arises from the engagement letter that contained the arbitration provision. See id. at ¶ 19; see also *Henderson v. Lawyers Title Ins. Corp.*, 108 Ohio St.3d 265, 2006-Ohio-906, 843 N.E.2d 152, ¶ 42; *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, at ¶ 6. Because the liquidator's claims differ in nature, we address each in turn.

*a. The malpractice claim*

{¶ 34} The liquidator's first claim alleged that E&Y failed to conduct its audit of ACLIC in accordance with generally accepted auditing standards as required and, consequently, material misstatements in ACLIC's financial statements went undisclosed or undetected. This malpractice claim does not arise from the engagement letter for two related reasons. First, the malpractice claim plainly does not seek a declaration of a signatory's rights and obligations under the engagement letter. See *Gerig* at ¶ 19. Second, the malpractice claim arises independently of the engagement letter because it arises from the powers given to the liquidator by the General Assembly together with the allegedly false or misleading audit report E&Y filed with ODI. See *Henderson* at ¶ 42.

{¶ 35} In *Gerig*, this court addressed whether an issue of insurance coverage was subject to arbitration in accordance with an agreement between a physician and a hospital. While under the care of a physician, Dawn Gerig gave birth to twins at St. Vincent Mercy Medical Center. At the time of the deliveries, the physician was working at the hospital under an affiliation agreement that required the hospital to insure him against medical-malpractice claims. The Gerigs filed suit against the physician and alleged that he caused birth defects to one of the twins by malpractice during the delivery. At the time the suit was filed, the hospital provided malpractice insurance to the physician through an insurance company with liability limits up to $4 million. In addition, the hospital funded a self-insurance plan to pay malpractice claims. Id. at ¶ 1–2.

**{¶ 36}** Thereafter, the insurance company became insolvent and was forced into liquidation. The Ohio Insurance Guaranty Association ("OIGA") became involved in the case to pay any covered claims brought by consumers against the insolvent insurance company, pursuant to R.C. Chapter 3955.

**{¶ 37}** Because the statutory limit for OIGA claims was $300,000 and because OIGA pays claims only after a claimant has exhausted her rights under all other insurance policies, the Gerigs, the physician, and OIGA sought judicial clarification on the issue of insurance coverage, in light of the insurance company's insolvency. Id. at ¶ 3–6. The Gerigs and the physician sought a declaration that by virtue of the affiliation agreement, the hospital was responsible for any judgment up to $4 million. The OIGA sought a declaration that by virtue of the affiliation agreement, the hospital was required to pay any judgment to the Gerigs under its self-insurance fund and that consequently, OIGA was not obligated to pay any damages unless the Gerigs exhausted that fund. The hospital moved the trial court to stay the proceedings and to compel arbitration in the medical-malpractice case and "also sought an order compelling arbitration of the dispute regarding whether St. Vincent [was] legally required, pursuant to the agreement, to insure [the physician] through its self-insurance plan." Id. at ¶ 7. The physician, who was the only other signatory to the affiliation agreement, did not oppose the hospital's motion.

**{¶ 38}** In deciding the issue, we first noted that the Gerigs and OIGA sought a declaration of the hospital's rights and obligations to the physician under the affiliation agreement. Id. at ¶ 12. By the same token, they did not have a direct dispute with the hospital. We then held that it would be inequitable to allow them to avoid arbitration while simultaneously seeking a substantive benefit of the contract that contained the arbitration clause. Accordingly, based on the principle of equitable estoppel, we found the arbitration agreement to be enforceable against the interested nonsignatories. Id. at ¶ 19.

16

{¶ 39} In this case, the liquidator is not seeking a declaration of E&Y's obligations to ACLIC. Notably, the liquidator's claim did not request or require the court to interpret the engagement letter to determine E&Y's obligations to ACLIC. The complaint alleges the following:

{¶ 40} (1) Pursuant to R.C. 3901.04, 3901.041, 3901.042, and 3905.29 and Ohio Adm.Code 3901-1-50, ACLIC had a duty to file its financial statements with ODI, including the financial statement for the year ending December 31, 1998.

{¶ 41} (2) Pursuant to Ohio Adm.Code 3901-1-50(E)(1), ACLIC was required to register with ODI the name of its certified public accountant retained to audit its financial statements, and ACLIC registered E&Y as its auditor.

{¶ 42} (3) Pursuant to Ohio Adm.Code 3901-1-50(H), E&Y had a duty to conduct its audit in a manner conforming to generally accepted auditing standards.

{¶ 43} (4) Pursuant to Ohio Adm.Code 3901-1-50(I), E&Y had a duty to inform ACLIC if it detected any material misstatements in the financial report.

{¶ 44} Additionally, the liquidator alleges that E&Y represented in its certification that was filed with ODI that it conducted the audit in accordance with generally accepted auditing standards but that E&Y did not, in fact, conduct its audit in accordance with those standards and, therefore, failed to discover or disclose material misstatements in the financial statements. As a result, the liquidator alleges, even though ACLIC was already insolvent, the superintendent, ACLIC's creditors, and the public did not know it. This claim plainly arises from statutory duties and certifications filed in public record by ACLIC and E&Y. In no form does the liquidator seek judicial interpretation of the engagement letter.

{¶ 45} Further, unlike the nonsignatories in *Gerig*, the liquidator has a direct dispute with E&Y—that is, she claims that ACLIC's policyholders, creditors, and the public, as well as ODI itself, relied on and were misled by the

audit report that E&Y prepared and filed with ODI.  Consequently, she alleges, the superintendent was hindered in exercising a greater level of oversight sooner, and E&Y thereby caused harm to policyholders, creditors, and the public by aiding ACLIC in continuing to transact business.  By its nature, this is a dispute between E&Y and the liquidator on behalf of the estate's creditors.  Therefore, *Gerig* is materially different from this case and does not compel the result sought by E&Y.

{¶ 46} This matter is guided by our ruling in *Henderson,* 108 Ohio St.3d 265, 2006-Ohio-906, 843 N.E.2d 152.  In *Henderson*, customers of a title-insurance company, Lawyers Title, filed a class-action complaint against it for its alleged failure to give them (and other policyholders) a 40 percent reissue credit that they were entitled to receive under the applicable rate schedule filed by Lawyers Title with ODI.  The named plaintiffs, the Hendersons, bought certain property in May 1999 and sold other property to the Johnsons in August 1999.  At each transaction, the buyers and sellers split the cost of title insurance; Lawyers Title provided the insurance for both deals.  Although the Hendersons and the Johnsons split the cost of the second insurance policy, it insured record title in the purchaser of the property, the Johnsons.

{¶ 47} Lawyers Title sought to compel the Hendersons to arbitrate based on an arbitration clause contained in the insurance policy that it issued to the Johnsons.  Id. at ¶ 5.  We upheld the lower courts' denial of Lawyers Title's motion on two bases, stating, "The holding in *Gerig* applies when a nonparty is 'seeking a declaration of the *signatories'* rights and obligations *under* the contract.' " (Emphasis added in *Henderson.*) Id. at ¶ 42, quoting *Gerig,* 95 Ohio St.3d 478, 2002-Ohio-2581, 769 N.E.2d 381, ¶ 19.  We reasoned that "the sellers' alleged rights with regard to a reissue credit exist independently of the purchasers' rights and obligations under the policy because the sellers are not parties to the

insurance contract and their rights arise instead from the terms of the insurer's rate schedule [that was filed with ODI]." Id.

{¶ 48} It is difficult to imagine a fact pattern that fits more neatly into the *Henderson* rule than the one presented here. The liquidator's claims arise from the harm that she alleges was caused by E&Y's filing of its certification of ACLIC's financial statement. Once the liquidator discovered that ACLIC was already insolvent when it filed financial statements that represented that it was solvent, the liquidator could trace the alleged harm to E&Y via the public filings and certifications, without reference to the engagement letter. Therefore, the claims do not arise from the engagement letter wherein E&Y agreed to provide the accounting services in conformance with the standards that the codes independently required it to observe.

{¶ 49} For all of these reasons, the malpractice claim does not arise from the engagement letter that contains the arbitration provision, and therefore, the liquidator is not bound by it.

### b. The preference claim

{¶ 50} The liquidator's second claim alleged that ACLIC transferred money to E&Y after it became insolvent and did so either to improperly favor E&Y or to defraud other creditors. Because preference and fraudulent-transfer claims arise only by virtue of statute and arise only in favor of the liquidator, they cannot as a matter of law arise from a contract entered into by an insolvent insurer. Therefore, E&Y may not enforce the arbitration clause against the liquidator's preference claims, because ACLIC did not have authority to bind the liquidator to arbitrate those claims. See *Peters v. Columbus Steel Castings Co.,* 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, at ¶ 6.

{¶ 51} In *Peters*, an employee entered into a contract with his employer that required him to arbitrate any legal claims "regarding [his] employment." Id. at ¶ 2. By its express terms, the arbitration provision purported to apply to the

employee's "heirs, beneficiaries, successors, and assigns." Id. The employee was fatally injured at work. Thereafter, his estate brought a survival action, as well as a wrongful-death action. Based on the arbitration provision of the employment agreement, the employer sought to compel arbitration of both claims. In response, the estate dismissed the survival claim and proceeded solely on the wrongful-death claim. The court of appeals affirmed the trial court's denial of the motion to dismiss for arbitration, and we upheld that decision. Id. at ¶ 6.

{¶ 52} In so holding, we explained that even though the claims are brought by the same nominal party, a survival action is brought to compensate for injuries a decedent sustained before death but that a wrongful-death action is brought on behalf of the decedent's beneficiaries for their damages arising from that death. Id. at ¶ 11. We further explained that there is no common-law wrongful-death action—only statutory rights that spring to life after a wrongful death. Id. at ¶ 9. With this understanding, we applied the principle that "only signatories to an arbitration agreement are bound by its terms" and, accordingly, held that " '[i]njured persons may release their own claims; they cannot, however, release claims that are not yet in existence and that accrue in favor of persons other than themselves.' " Id. at ¶ 7 and 15, quoting *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 183, 637 N.E.2d 917. The employee, therefore, "could not restrict his beneficiaries to arbitration of their wrongful-death claims, because he held no right to those claims; they accrued independently to his beneficiaries for the injuries they personally suffered as a result of the death." Id. at ¶ 19.

{¶ 53} Likewise, an insurance company does not have the authority to bind the liquidator to arbitrate preference or fraudulent-transfer claims, which are purely statutory claims that spring to life in favor of the liquidator only upon the issuance of a liquidation order. R.C. 3903.26. The very nature of the preference claim suggests this result. It would be illogical to allow an insolvent insurer to bind the liquidator to arbitrate her preference claims when such claims exist only

when there is an allegation that the insolvent insurer did something improper by transferring the money in the first place. See R.C. 3903.26(A) ("Every transfer made * * * by an insurer within one year prior to the filing of a successful complaint for rehabilitation or liquidation * * * is fraudulent as to then existing and future creditors if made or incurred without fair consideration, or with actual intent to hinder, delay, or defraud either existing or future creditors"). Therefore, the liquidator's preference claims cannot, as a matter of law, be subject to an arbitration agreement entered into by an insolvent insurer.

### c. Conclusion

{¶ 54} The liquidator's malpractice and preference claims are not subject to arbitration based on the agreement entered into by E&Y and ACLIC. Therefore, E&Y's third argument that the liquidator cannot disavow part of a contract is moot. Likewise, we do not reach the liquidator's argument that an irreconcilable conflict exists between the Ohio Liquidation Act and the Ohio Arbitration Act. The Tenth District did not analyze whether the liquidator's claims arise from the engagement letter. Instead, it relied on another case in which it concluded that " 'compelling arbitration against the will of the liquidator will *always* interfere with the liquidator's powers and will *always* adversely affect the insolvent insurer's assets.' (Emphasis sic.)" *Hudson v. Ernst & Young,* 189 Ohio App.3d 60, 2010-Ohio-2731, 937 N.E.2d 585, at ¶ 20, quoting *Pipoly*, 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50, at ¶ 45. In *Pipoly*, the Tenth District held that the liquidator was not bound to an arbitration agreement in an employment contract that was entered into by the insurer and its employees, because her claims did not arise from the employment contract. Nonetheless, that court went on to hold that conflicts, when they did arise, would always be irreconcilable and arbitration agreements of the insolvent insurer's can never be enforced against the liquidator. But we are required by the General Assembly to

construe potentially conflicting statutes so that effect is given to both.  R.C. 1.51.
We have done so.

## D.  The Tolling Agreement Did Not Preserve
## the Right to Compel Arbitration

{¶ 55} E&Y's second proposition can be disposed of in short order.  E&Y
contends that the tolling agreement preserved its right to compel arbitration under
now-overruled Tenth District case law.  In the tolling agreement, E&Y agreed that
for a period of one year from the effective date, May 2, 2002, the liquidator "may
forbear and postpone the filing, commencement and prosecution of any and all
claims or causes of action it may have against E&Y: (a) arising out of accounting
or auditing services provided by E&Y to ACLIC; or (b) arising out of transfers of
monies or other property from ACLIC to E&Y during the period from March 13,
1999 to March 13, 2000."  The liquidator also agreed that E&Y could likewise
"forbear and postpone the filing, commencement and prosecution of any and all
claims, causes of action or counterclaims it may have against ACLIC: (a) arising
out of accounting or auditing services provided by E&Y to ACLIC; or (b) arising
out of transfers of monies or other property from ACLIC to E&Y during the
period from March 13, 1999 to March 13, 2000."  The parties agreed that any
lawsuit brought within the tolling period would not be deemed time-barred if the
lawsuit or claim would not be deemed time-barred on the effective date.  The
parties further agreed that the liquidator "may otherwise assert, as defenses to any
lawsuit or claim E&Y may file against ACLIC, all defenses that ACLIC has as of
the Effective Date, including but not limited to the statute of limitations," and that
E&Y "may otherwise assert, as defenses to any lawsuit or claim the liquidator
may file against E&Y, all defenses that E&Y has as of the Effective Date,
including but not limited to the statute of limitations."

{¶ 56} "The general rule is that a decision of a court of supreme
jurisdiction overruling a former decision is retrospective in its operation, and the

22

effect is not that the former was bad law, but that it never was the law." *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467. The tolling agreement simply gave each side additional time to file claims against the other and preserved each side's right to defend against those claims.

### III. CONCLUSION

{¶ 57} For all of these reasons, the judgment of the court of appeals is affirmed, and this cause is remanded to the common pleas court.

Judgment affirmed

and cause remanded.

PFEIFER, LUNDBERG STRATTON, LANZINGER, and MCGEE BROWN, JJ., concur.

O'DONNELL and CUPP, JJ., concur in part and dissent in part.

_____

**O'DONNELL, J., concurring in part and dissenting in part.**

{¶ 58} The majority has determined that the liquidator is not bound by the arbitration clause contained in the engagement letter between Ernst & Young ("E&Y") and American Chambers Life Insurance Company ("ACLIC"), because the liquidator does not stand in the shoes of the insolvent insurer and the claims asserted by the liquidator do not arise from the engagement letter.

{¶ 59} I concur in the majority's opinion to the extent that the liquidator cannot be compelled to arbitrate the preference claim, but because I find that the liquidator stands in the shoes of the insolvent insurer and that the claim alleging that E&Y breached its duties arises from the engagement letter, I respectfully dissent as to that portion of the opinion.

*Facts and Procedural History*

{¶ 60} In November 1998, E&Y and ACLIC entered into an agreement for E&Y to provide auditing services to ACLIC in exchange for an estimated

$46,000. The engagement letter, which memorialized the agreement, stated that E&Y would "audit and report on the consolidated financial statements" of ACLIC and provide an "opinion on the fairness, in all material respects, of the presentation of the financial statements in conformity with generally accepted accounting principles or those prescribed or permitted by the Ohio Insurance Department, respectively." It also contained a provision that required the arbitration of "[a]ny controversy or claim arising out of or relating to the services covered by this letter."

{¶ 61} According to the complaint, the superintendent of insurance filed an action in the Franklin County Court of Common Pleas in March 2000, seeking to place ACLIC in rehabilitation pursuant to R.C. 3903.13. In May 2000, the court found ACLIC to be insolvent and issued a final order of liquidation and appointment of a liquidator.

{¶ 62} On April 30, 2003, the superintendent of insurance, as liquidator of ACLIC, filed suit against E&Y, alleging that it had "failed to properly audit ACLIC's financial statements for the year ending December 31, 1998, in accordance with generally accepted auditing standards, and failed to detect material misstatements in those financial statements." The complaint stated two claims against E&Y. The first claim alleged, "E&Y negligently failed to perform its duties as the independent certified public accountant retained to conduct the audit of ACLIC's December 31, 1998, Annual Statement, thus breaching the duties owed. * * * As a direct and proximate result of E&Y's breach of its duties, ACLIC as well as its policyholders, creditors and the public suffered substantial harm and injury." The second claim alleged that E&Y received preferential or fraudulent payments of more than $25,000, which the liquidator asserted the right to recover pursuant to R.C. 3903.28(A) or 3903.26.

{¶ 63} E&Y moved to dismiss or stay the proceedings and compel arbitration based on the arbitration provision in the engagement letter. The

liquidator opposed E&Y's motion, asserting that because the claims arose from E&Y's breach of its duties pursuant to Ohio law and not the engagement letter, arbitration could not be compelled. The trial court denied E&Y's motion, and the court of appeals affirmed.

*Law and Analysis*

{¶ 64} In *Hudson v. Petrosurance*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 16, this court recognized, "The Liquidation Act sets forth a comprehensive framework governing the liquidation of insurance companies operating in Ohio. The purpose of the act is to protect the interests of insureds, claimants, creditors, and the public generally, and the provisions of the act are to be liberally construed to effectuate this purpose. See R.C. 3903.02(C) and (D)."

{¶ 65} If the superintendent of insurance determines that an insurer has become insolvent, R.C. 3903.17 authorizes the superintendent to file a complaint in the court of common pleas for an order of liquidation. Upon the court's issuance of such an order, the superintendent, acting as liquidator, takes possession of the assets of the insurer and is "vested by operation of law with the title to all of the property, contracts, and rights of action and all of the books and records of the insurer ordered liquidated, wherever located, as of the entry of the final order of liquidation." R.C. 3903.18(A).

{¶ 66} The statutory powers of the liquidator are enumerated in R.C. 3903.21 and include the authority to "[e]nter into such contracts as are necessary to carry out the order to liquidate, and to affirm or disavow any contracts to which the insurer is a party." R.C. 3903.21(A)(11). The statute also enables the liquidator to "prosecute and to commence in the name of the insurer or in his own name any and all suits and other legal proceedings, in this state or elsewhere," and, upon dissolution pursuant to R.C. 3903.20, "apply to any court in this state or elsewhere for leave to substitute himself for the insurer as plaintiff." R.C. 3903.21(A)(12). The statute further authorizes the liquidator to "[p]rosecute any

action which may exist in behalf of the creditors, members, policyholders, or shareholders of the insurer against any officer of the insurer or any other person." R.C. 3903.21(A)(13).

{¶ 67} By taking possession of and title to the assets and contracts of the insolvent insurer, the liquidator succeeds to the insurer's property and interests and is, therefore, in privity with the insolvent insurer. Cf. *Morris v. Jones* (1947), 329 U.S. 545, 550, 67 S.Ct. 451, 91 L.Ed. 488 ("Nor is there any lack of privity between Chicago Lloyds and the Illinois liquidator. There is no difference in the cause of action, whether Chicago Lloyds or the liquidator is sued" [citations omitted]); *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, paragraph four of the syllabus, overruled on other grounds, *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226 ("Generally, a person is in privity with another if he succeeds to an estate or an interest formerly held by another").

{¶ 68} When a liquidator prosecutes or commences an action on behalf of the insolvent insurer or its creditors, members, policyholders, or shareholders, seeking to recover their assets or protect or enforce their rights, the liquidator stands in the shoes of the insolvent insurer. E.g., *Hudson v. Petrosurance*, 10th Dist. No. 08AP-1030, 2009-Ohio-4307, 2009 WL 2596962, ¶ 39, and cases cited therein; *Bennett v. Liberty Natl. Fire Ins. Co.* (C.A.9 1992), 968 F.2d 969, 972; *Costle v. Fremont Indemn. Co.* (D.Vt.1993), 839 F.Supp. 265, 272; *Foster v. Monsour Med. Found.* (Pa.Commw.1995), 667 A.2d 18, 20; *Reider v. Arthur Andersen, L.L.P.* (Conn.Super.2001), 47 Conn.Supp. 202, 205, 784 A.2d 464.

### The first claim against E&Y

{¶ 69} The liquidator's first claim alleges that E&Y negligently rendered auditing services, breaching the duties it owed to ACLIC. The engagement letter contractually obligated E&Y to render auditing services to ACLIC and set forth E&Y's responsibilities and duties. The arbitration provision contained in the

engagement letter required the parties to arbitrate "[a]ny controversy or claim arising out of or relating to the services covered by this letter." The liquidator, however, asserts that this claim does not arise out of the engagement letter but, rather, that it arises out of E&Y's failure to perform its obligations as required by Ohio law.

{¶ 70} In *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 18, this court held that a provision that mandates the arbitration of claims or controversies "arising out of or relating to" the contract is considered a broad clause, encompassing any dispute arising out of the business relationship. We further explained, "Arbitration is not limited to claims alleging a breach of contract, and creative pleading of claims as something other than contractual cannot overcome a broad arbitration provision. The overarching issue is whether the parties agreed to arbitrate the issue." Id. at ¶ 19.

{¶ 71} Here, the liquidator is a successor in interest to, and in privity with, ACLIC and is therefore bound by ACLIC's agreement with E&Y. This is the type of claim that ACLIC could directly pursue if it were not in liquidation. By prosecuting such a claim, the liquidator stands in ACLIC's shoes and is bound by its agreement to arbitrate. Cf. *Reider*, 47 Conn.Supp. at 205, 784 A.2d 464 (liquidator stands in the shoes of the insolvent insurer when prosecuting a claim the insurer could have pursued were it not in liquidation). The arbitration provision contained in the engagement letter is a broad clause, and this claim involves an issue that falls within its scope. Accordingly, the liquidator is bound by ACLIC's agreement to arbitrate.

{¶ 72} E&Y rendered auditing services to ACLIC only by virtue of its agreement with ACLIC, and the liquidator's claim alleging that E&Y negligently performed its duties necessarily implicates the engagement letter. The liquidator attempts to create distance from the engagement letter by asserting that this claim

arose from E&Y's breach of its duties pursuant to Ohio law. The duties imposed by Ohio law, however, are the same duties set forth in the engagement letter. And, as asserted, the claim merely alleges that E&Y breached its duties; it does not identify the predicate source of those duties, let alone rule out the engagement letter as being that source.

{¶ 73} The plain language of R.C. 3903.21(A)(11) permits the liquidator to disavow contracts as a whole, not provisions of a contract. See *Fed. Deposit Ins. Co. v. Ernst & Young, L.L.P.* (N.D.Ill.2003), 256 F.Supp.2d 798, 805 (construing an analogous federal statute that permits a receiver to repudiate "any contract or lease" to allow only the repudiation of a contract as a whole and not "those provisions of a contract with which [the receiver] is dissatisfied"). Thus, the liquidator cannot prosecute an action for breach of contract or one involving a contract on the authority conferred in R.C. 3903.21(A)(12) or (13) and yet seek to escape arbitration by disavowing an arbitration provision contained in that contract pursuant to R.C. 3903.21(A)(11). Cf. *Bennett*, 968 F.2d 969; *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (C.A.3 1989), 885 F.2d 1149; *Costle*, 839 F.Supp. at 272 ("if a liquidator seeks to enforce an insolvent company's rights under a contract, she must also suffer that company's contractual liabilities"); *Koken v. Cologne Reinsurance, Ltd.* (D.C.Pa.1999), 34 F.Supp.2d 240; *Foster v. Philadelphia Mfrs.* (1991), 140 Pa.Commw. 186, 592 A.2d 131.

{¶ 74} Because this is a case in which the liquidator brought suit on behalf of an insolvent insurer and its creditors, shareholders, and policyholders against a third party for its alleged failure to perform auditing services rendered pursuant to a contract, the liquidator necessarily stands in the shoes of the insolvent insurer and cannot assert a claim that arises from and is intertwined with a contract while at the same time disavowing a provision in that contract requiring arbitration.

28

**{¶ 75}** The majority determines that the liquidator does not stand in the shoes of the insolvent insurer as a successor in interest and is not bound by the arbitration provision, relying primarily on *Equal Emp. Opportunity Comm. v. Waffle House* (2002), 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755, to support its determination. The question in *Waffle House* involved "whether an agreement between an employer and an employee to arbitrate employment-related disputes bars the Equal Employment Opportunity Commission (EEOC) from pursuing victim-specific judicial relief, such as backpay, reinstatement, and damages, in an enforcement action alleging that the employer has violated Title I of the Americans with Disabilities Act of 1990 (ADA), 104 Stat. 328, 42 U.S.C. § 12101 *et seq.* (1994 ed. and Supp. V)." Id. at 282. The court held that the employee's agreement to arbitrate did not bind the EEOC from exercising the enforcement authority granted it by Congress, and the "provisions of Title VII defining the EEOC's authority" served as the predicate for its decision. Id. at 285-286. The court explained that "[t]o hold otherwise would undermine the detailed enforcement scheme created by Congress [for the EEOC] * * * ." Id. at 296.

**{¶ 76}** The majority's reliance on *Waffle House* is misplaced because that case is readily distinguishable. While on its face the case involves the same issues, i.e., whether a nonsignatory to an arbitration agreement can be compelled to arbitrate, the decision in *Waffle House* turned on the complex federal statutory framework of the EEOC, which is not analogous to the statutory scheme and purpose of R.C. Chapter 3903. In addition, nothing in *Waffle House* indicates that its holding applies outside the scope of employment disputes involving the EEOC. For these reasons, *Waffle House* cannot be considered as having precedential value regarding the issue before this court. Cf. *Webster v. Fall* (1925), 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 ("Questions which merely lurk in the record,

29

neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents").

{¶ 77} Moreover, in rejecting Waffle House's argument that the EEOC stood in the shoes of the employee, the court noted that the EEOC did not sue in a wholly derivative capacity. Unlike the EEOC, however, the liquidator, as established by the allegations in the complaint, brought suit against E&Y in a derivative capacity; the first paragraph of the complaint provides, "As the Liquidator of ACLIC, the Superintendent is empowered, pursuant to Sections 3903.21(A)(12) and (13) of the Ohio Revised Code, to commence and/or prosecute actions *on behalf of its creditors, shareholders and/or policyholders*." (Emphasis added.) Additionally, the liquidator alleged that jurisdiction and venue were proper because the claims "against each defendant arise from that defendant's transaction of business in this state, contracting to supply services in this State, causing tortious injury by an act or omission in this state, and/or causing tortious injury in this state by an act or omission outside this state." Thus, the allegations in the complaint, coupled with the role of the liquidator pursuant to R.C. Chapter 3903, further distinguish this case from *Waffle House*.

{¶ 78} Even if the liquidator did not stand in ACLIC's shoes, the liquidator is still bound to arbitrate this claim. The majority determines that this claim does not arise from the engagement letter because it does not seek a declaration of ACLIC's rights and obligations under the engagement letter, and it arises from the liquidator's statutory duties, which exist independently of the engagement letter. As previously explained, however, the duties imposed by Ohio law that E&Y allegedly failed to perform are the same as those set forth in the engagement letter, and whether cast in tort or contract, the issue is one that falls within the broad scope of the arbitration provision. It also bears repeating that the claim alleges that ACLIC "retained" E&Y to conduct its audit and that retention occurred only because of the engagement letter. Moreover, although the

liquidator may be empowered by statute to assert this claim, the basis for the claim is E&Y's alleged negligence, which arose from the services it rendered pursuant to the engagement letter. In fact, the complaint alleges the foregoing to establish venue and jurisdiction. Thus, because this claim arises from the engagement letter, the arbitration provision is enforceable against the liquidator.

{¶ 79} Accordingly, I would hold that the liquidator is bound by the engagement letter to arbitrate this claim because the liquidator, as a successor in interest to ACLIC, stands in its shoes, the claim is one that ACLIC could itself prosecute were it not in liquidation, and the claim arises from the engagement letter. Additionally, equitable-estoppel considerations also operate to compel arbitration of this claim.

### The second claim against E&Y

{¶ 80} This claim seeks to recover the fee paid by ACLIC to E&Y for the auditing services rendered. And unlike the first claim asserted by the liquidator against E&Y, this claim is expressly premised upon R.C. 3903.28(A) and 3903.26. The majority correctly concludes that preference claims arise only by virtue of statute and can be asserted only by the liquidator. Courts from other jurisdictions are in accord with that view. See, e.g., *Grode v. Mut. Fire, Marine & Inland Ins. Co.* (C.A.3 1993), 8 F.3d 953; *Pine Top Ins. Co. v. Republic W. Ins. Co.* (N.D.Ill.1990), 123 B.R. 277, 285; *Hays & Co.*, 885 F.2d at 1155 (nonsignatory liquidator could be compelled to arbitrate claims that were derivative of the debtor but not a fraudulent-transfer claim brought on behalf of the debtor's creditors); *Amcomp Preferred Ins. Co. v. Koken* (Fla.App.2005), 916 So.2d 986 (liquidator not compelled to arbitrate claim to recover preferential payments). Accordingly, I concur in the majority's decision that the liquidator cannot be compelled to arbitrate this claim.

*Conclusion*

**{¶ 81}** Based on the foregoing, it is my position that the liquidator is bound by the arbitration provision to arbitrate the claim alleging that E&Y breached its duties but cannot be compelled to arbitrate the preference claim. Accordingly, I would affirm in part and reverse in part the judgment of the court of appeals and remand the matter, ordering the case stayed pending arbitration of the liquidator's first claim against E&Y.

CUPP, J., concurs in the foregoing opinion.

_____

Michael DeWine, Attorney General, Alexandra T. Schimmer, Chief Deputy Solicitor General, Stephen P. Carney, Deputy Solicitor, and Thaddeus H. Driscoll, Assistant Solicitor; and Kegler, Brown, Hill & Ritter Co., L.P.A., and Melvin D. Weinstein, for appellee.

Squire, Sanders & Dempsey, L.L.P., John R. Gall, and Aneca E. Lasley; and Mayer Brown, L.L.P., Stanley J. Parzen, and James C. Schroeder, for appellant.

_____